# COUNTY OF SAGADAHOC.

OCTAVIA MCKEEN & *als., Appellants from a decree of the Judge of Probate, versus* PHEBE C. FROST, *Executrix.*

The execution of a will was proved by two of the subscribing witnesses thereto, where it was shown that the other witness was, and for several years had been, residing in California.

A person, named as executor in a will, is not really and legally such, until the will is proved and he has given bond; and, in a contest as to its execution, he is not within the exception provided by § 83 of c. 82 of R. S. of 1857.

The provisions of c. 82 of R. S. of 1857, do not change the law, which, on account of his marital relation, excludes the husband from testifying in a suit to which his wife is a party.

THIS was an appeal from a decree of the Judge of Probate in the county of Sagadahoc, approving and allowing the last will and testament of William Frost.

The appellee called Ebenezer Everett and A. J. Stone, two of the subscribing witnesses to the will, and proposed to examine them as to the due execution of it.

The appellants objected to the examination of these witnesses, unless one James G. Mustard, whose name was also on the will as a witness, was produced or his deposition taken.

The appellee, then, to account for his absence, offered the deposition of Fanny P. Mustard, wife of said James, and called A. J. Stone, who testified that Mustard left Brunswick, which was his place of residence, about six years ago, and had not returned since. That he left with the intention of going to California. Had not seen him since. That he (witness) lived in Brunswick and was acquainted with Mustard so well that he would have been likely to know it, if he had ever returned. That witness was postmaster at Brunswick. That a letter passed through the office from California, from said Mustard to his wife, two or three mails since.

Thereupon the presiding Judge, intending to reserve the

question for the full Court, admitted the two witnesses to testify. And their testimony fully substantiated all the facts necessary to prove the due and legal execution of the will.

In the progress of the trial, the appellants offered the deposition of Jane P. Frost, guardian of the minor children of Obed Frost, deceased, who in said capacity was one of the appellants, and also one of the obligors in the appeal bond.

The deposition, being objected to by appellee, was rejected.

The appellants also offered James McKeen, husband of Octavia McKeen, appellant, and Israel Putnam, husband of —— Putnam, appellant, also obligors in the appeal bond, as witnesses, who, being objected to, were not admitted to testify.

The appellant then offered the deposition of Wildes P. Walker, to so much of which, in answer to third interrogatory, as is embraced in these words, — " It was the subject of remark that he was failing, and, in my judgment, as much in mind as in bodily health"—the appellee objected, and it was excluded by the Court.

A verdict was thereupon taken for the appellee, and the appellants filed exceptions.

*Evans & Bronson*, for the appellants, argued in support of the exceptions: —

By the general rule of probate, "all the subscribing witnesses should be examined by the plaintiff."

This rule is only departed from *ex necessitate rei. Brown* v. *Wood*, 17 Mass. 73; *Chase* v. *Lincoln*, 3 Mass. 237.

No such necessity exists, so long as the moving party may obtain personal examination of witness. *Rich* v. *Trimble*, 2 Tyler, 349.

Nor, under present facilities of obtaining foreign examinations, is it to be presumed that it is out of the appellee's power to obtain Mustard's testimony. *Greyson* v. *Atkinson*, 2 Ves. 460.

Especially, under existing circumstances; witness being in a confederate State, and the ordinary methods of communication between him and his friends preserved.

McKeen *v.* Frost.

All the presumptions against secondary evidence exist here in full force. The witness is the one whom the statute has specially designated as a security against fraud; yet, though within the process of the Court, no effort has been made to obtain his examination.

The rule of the common law courts, if apparently conflicting, does not apply:—

Because that grew up in those courts when commissions into foreign countries were unknown; while the statute creating our Probate Courts clothed them with ample powers of issuing the same:—

Because our Probate Courts are of a local and peculiar jurisdiction and character, having their origin in statute law, and with large facilities of moulding their rules of practice in conformity with the improved circumstances of the law:—

Because, in matters of wills, more especially, the practice of the common law is in no way analogous to our Probate practice. c. 64, § 3 of R. S., 1857, (R. S., 1841, c. 106, § 6.)

The rule we contend for is in accordance with the whole spirit of our statutes providing for depositions abroad, and, in turn, lending their aid for obtaining testimony for the use of courts in the confederate States.

We have a clear indication of the legislative intention in the statutes establishing our Probate Courts. Massachusetts statutes, 1785, c. 12, § 3; Maine statutes, 1821, c. 51, §§ 12 and 13; R. S., 1841, c. 106, §§ 5 and 6; R. S., 1857, c. 64, §§ 2 and 3.

The above statute of 1785 conferred the power of issuing *dedimus potestatem* into foreign countries.

It conferred this power upon the Probate Court only; and this, of course, by *selection*, as all the courts were about that time reorganized; yet the common law courts did not receive the power till the statute of 1797, c. 35.

This power was *limited* to the examination of *attesting* witnesses.

The statute of 1785 gives foreign examination the "*force* and *effect*" of *viva voce* testimony. It would not have made

this careful declaration, had it intended that such unsatisfactory evidence as mere proof of handwriting should be substituted unnecessarily.

In *Sears* v. *Dillingham*, 12 Mass. 30, the Court had this statute in their mind and indicated their favorable inclination. By the whole of the clause " or gone into foreign parts beyond the authority of the State, or the power of the persons interested to procure depositions," they contemplated only a single state of events, else the latter portion would have been supererogatory and inconsistent.

The exceptions enumerated in R. S., c. 82, § § 80 and 83, do not exclude the deposition of Jane P. Frost. They relate to :—

" The attestation of the execution of the will," &c. :—

Cases where a " party prosecuting or defending is an executor," &c. :—

Cases where some one is " made party, as heir of a deceased party."

As to the first; the " attestation of the execution of a will," is only the subscribing the same by " three disinterested and credible attesting witnesses," as provided in R. S., c. 74, § 1.

Jane P. Frost was not a subscribing witness, and the admission of her deposition has nothing to do with the attestation, but leaves that to be made in whatever way the rule of law may require.

The statute intended that, whatever might be the law of evidence at the trial of issues, the safeguards which the law throws around testators should not be diminished. This intention can in no way be infringed by the admission of the deposition.

As to the second exception; the appellee is, as yet, no executrix; she cannot be until these issues are determined. For all present purposes, she is only the person offering the will for probate. Were this the case of a devisee, or some other person, offering the will, it would not be pretended that the exception would apply. The appellee here stands no better than would the devisee in the supposed case.

Moreover, this exception was only intended for cases which arose in the lifetime of the deceased, between him and the adverse party.

In such cases, the representative party cannot be presumed to be cognizant of the facts, and his testimony cannot balance that of the adverse party.

As to the third exception; there is here no " deceased party," either to the writ or its subject. Moreover, it is founded on the same reasons as the preceding, and only applies when the heir is sought to be charged on the liabilities of his ancestor. The exception was intended for the benefit of the heir; here it is sought to be used against him.

The foregoing applies to the testimony of McKeen and Putnam, unless excluded on account of their marital relations.

Husband and wife could not testify for each other on account of identity of interest. They could not testify adversely, not because of identity of interest, but for the sake of families.

*Barrows*, with whom was *Shepley & Dana, contra.*

Where the statute in regard to attestation of wills is complied with, the will may be admitted to probate without the testimony of all the witnesses. *Davis* v. *Mason*, 1 Pet. 503; *Hight* v. *Wilson*, 1 Dall. 94; *Deakins* v. *Hollis*, 7 Gill & Johns. 311; *Bowling* v. *Bowling*, 8 Ala. 538; [U. S. Dig. 1847, p. 486, § 38;] *Welch* v. *Welch*, 9 Rich. Law, (S. C.) 133; [U. S. Dig. 1857, p. 604.]

Where it is impossible, upon legal principles, to obtain the testimony of all three of the witnesses, or where some of them have become incompetent, or infamous, or removed from the State after the attestation of the will, the will may be admitted to probate upon proof by other witnesses. *Sears* v. *Dillingham*, 12 Mass. 358; *Patten* v. *Tallman*, 27 Maine, 17; *Price* v. *Brown*, 1 Bradford's (Surrogate) R. 293.

The case shows that Mustard, one of the witnesses, was out of the jurisdiction of the Court, and beyond the reach of the parties proponent. The witnesses who were present

proved the due and legal execution of the will. This, of course, includes proof of Mustard's signature as witness.

The true doctrine with regard to the production of the subscribing witnesses to a will is simply this, that the testimony of all shall be produced, or its absence satisfactorily accounted for, so that no reasonable suspicion may arise that it is suppressed lest it should prove unfavorable. And it is well settled that, when any of the witnesses are dead, out of the jurisdiction of the Court, or have become incompetent since the attestation, the testimony of the remaining witnesses, or other evidence, is admissible, and (the requisite facts appearing) sufficient to establish the will. Jarman on Wills, 3d American ed. vol. 1, p. 222, and cases there referred to; *Hawes* v. *Humphrey*, 9 Pick. 357; *Patten* v. *Tallman*, 27 Maine, 17; *Price* v. *Brown*, 1 Bradford's R. 293.

The opinion of the Court was drawn up by

TENNEY, C. J.—The names which appear, as attesting witnesses, upon the instrument purporting to be the last will and testament of William Frost, are Ebenezer Everett, Alfred J. Stone, and James G. Mustard. It was in evidence that Mustard had been in California for six years before, and was not present at the trial of this cause in this Court. Everett and Stone were allowed to testify, against the objection of the appellants, made upon the ground that the appellee was bound to produce the evidence of Mustard in some form, in order to establish the will.

It was decided, in the case of *Chase & als.* v. *Levi Lincoln, Ex'r*, 3 Mass. 236, that the three subscribing witnesses to a will must be produced at the probate thereof, &c.

It is said, in 2 Greenl. Ev. § 691, " the attesting witnesses are regarded in law as persons placed around the testator, in order that no fraud may be practiced upon him, in the execution of the will, and to judge of his capacity." And, in § 692, it is said, " this amount of proof, by all the attesting witnesses, if they can be had, may be demanded by any per-

son interested in the will." *Brown & al.* v. *Wood & ux.*, 17 Mass. 68.

The same doctrine is maintained in chancery, notwithstanding some remarks to the contrary have sometimes fallen from distinguished Chancellors, as in the case of *Powell* v. *Weaver*, 2 Bro. Ch. 504, Lord Chancellor THURLOW said, "I doubt whether the rule has ever been laid down so largely that the will could not be proved, without examining all the witnesses, although the practice has been to examine all."

In *Booth* v. *Blundell*, 19 Vesey, 500, Lord Chancellor ELDON states the general rule to be, that all the witnesses to a will must be examined. That rule, he says, is laid down by Lord HARDWICKE, in a manuscript note by Mr. Joddrill, when only two of the witnesses were examined.

But a material question is presented in this case, whether the fact, that Mustard was living in California, is sufficient to dispense with his testimony, so that the will could be approved and established by the testimony of the other two attesting witnesses.

As a general rule, when an instrument purports to have been attested by a witness, the party on whom the proof of the instrument lies must, unless the instrument appears to be thirty years old, either call the attesting witness, or show that the usual proof, by means of the attesting witness, has become impossible. For this purpose, he may prove that the witness is abroad, and beyond the process of the Court. 1 Stark. Ev. 338.

In *Sears* v. *Dillingham & al.*, 12 Mass. 358, it is said by the Court, "cases may arise where none of the attesting witnesses [to a will] can be examined; as if they should all be dead, or should become infamous, after the attestation, or should have gone into foreign parts beyond the authority of the State, or the power of the persons interested to obtain depositions. In such cases, there seems to be no reason why the rules of the law, which admit of evidence of an inferior character, in relation to deeds or other instruments, should not be applicable to a will, as to a deed or bond; provided

the formalities required by the statute appear to have been observed."

In the case of *Brown & al.* v. *Wood & ux.*, before cited, JACKSON, J., says, "we must suppose that there was a legal excuse for the absence of the third subscribing witness to the will. Various reasons may have existed, which would furnish such excuse."

A point was made, in *Lord Carrington* v. *Payne*, 5 Vesey, 404, whether one of the witnesses to the will, being abroad in Jamaica, it was necessary to send out a commission to examine him. His handwriting was proved, and the other two witnesses were examined. The Master of the Rolls, Sir RICHARD PEPPER ARDEN, held that "it was not necessary to have his examination, but it was the same as if he was dead." And, in *Mr. Fitzherbert's case*, one of the witnesses being in India, it was held "not necessary but very dangerous to send the will abroad."

It was decided, in *Wood* v. *Stane*, 8 Price, 615, that an exception to the general rule was reasonable, when one of the witnesses was proved to be in the West Indies. The rule would be in a like manner relaxed, if it appeared that one of the witnesses was, owing to any other cause, not amenable to the jurisdiction of the Court. *Frye* v. *Wood*, 1 Atk. 445.

In the case cited from 19 Vesey, 500, where two only of the witnesses to the will were examined, it was contended, on a bill of review, that this was error, apparent on the record. But Lord ELDON remarked that, "as the third witness was dead, HARDWICKE held that to be a necessary exception out of the rule. So in another case, in 1741, *Billings* v. *Brooksbank*, as the witness, being out of the kingdom, could not be examined, Lord HARDWICKE considered that to be another case out of the general rule; which, I repeat, is that all the witnesses must be examined, that general rule admitting necessary exceptions."

Mr. Phillips, in his treatise on Evidence, vol. 1, p. 440, says, "If a subscribing witness is abroad, who ought to be called if he could be produced, his handwriting may be proved in the

case of a will, as in cases on the execution of a deed, and the rule appears to be the same in courts of equity."

"When one of the attesting witnesses to a will is abroad, it seems to be sufficient, as in other instances of instrumentary proof, to give evidence of his handwriting. And this seems to be allowed by the practice of courts of equity, as well as in courts of law." 3 Stark. Ev. 1693.

In the case cited from 3 Mass. 236, it is held that all the attesting witnesses to a will must be produced, if living and under the power of the Court.

It is said by Mr. Greenleaf, in his work on Evidence, vol. 2, § 694, "It is ordinarily held sufficient, in courts of common law, to call one only of the subscribing witnesses, if he can speak to all the circumstances of the attestation; and it is considered indispensable that he should be able, alone, to prove the perfect execution of the will, in order to dispense with the testimony of the other witnesses, if they are alive and within the jurisdiction."

It is insisted that, inasmuch as the Rev. Stat. of 1841, § 5, of c. 106, and of Rev. Stat. of 1857, c. 64, § 2, provide for the taking of depositions, of witnesses who live out of the State, or more than thirty miles distant, or by age or indisposition of body are unable to attend Court, the depositions of such witnesses, taken before any magistrate authorized by commission from such Judge, shall be competent evidence of such witnesses. The testimony of all the attesting witnesses to a will are indispensable, notwithstanding they may be beyond the jurisdiction of the Court. The statute allows depositions so taken to be used, but is entirely silent as to the necessity of having all the testimony of attesting witnesses at the trial produced. It may be, and often is, impossible to compel a witness in another State to testify in a deposition; the court of another State cannot do this, and, unless the statutes of the State, in which the witness may be found, provide some compulsory means, the attempt to obtain his evidence may be abortive.

This provision, last referred to, had its origin as early as

the year 1785, in the statutes of Massachusetts, c. 12, § 3. In 1807, in the case of *Chase & als.* v. *Lincoln*, before cited, it is implied in the opinion of the Court that, if the witnesses to the will are not living, or not within the power of the Court, their presence is not indispensable to the probate of the will.

The testimony of the attesting witnesses, Everett and Stone, was properly received.

Another question presented is, whether the deposition of Jane P. Frost, guardian of the minor children of Obed. Frost, deceased, who, in said capacity, was one of the appellants, and one of the obligors in the bond to prosecute the appeal, was properly excluded.

When a will is duly proved and allowed, the Judge of Probate may issue letters testamentary thereon, to the executor named in the will, &c., if he accept the trust and give the bond required by the statute. If the executor neglects, for the space of twenty days after the approval of the will, to give such bond, the Judge may grant letters to the other executors, if there be any capable and willing to accept the trust. R. S. c. 64, § 4, and, by the next succeeding section, "every executor, before entering on the execution of his trust, shall give bond, with sufficient sureties, &c. It follows, from the foregoing provisions, that the person named in the will, as an executor, has no power to act, ordinarily, as a party, in that character, merely by such nomination. The will may never be approved; the Judge may withhold, absolutely, letters testamentary from him; or he may not be qualified for the trust, by omitting to obtain the security required for the faithful execution of the trust.

By R. S., c. 82, § 78, "no person shall be excused or excluded from being a witness in any civil suit, or proceeding at law or in equity, by reason of his interest in the event thereof, as party or otherwise," except as is afterwards provided. By § 80, nothing in the preceding section shall in any manner affect the law relating to the attestation of the execution of last wills and testaments, &c. It is not understood that the

deposition of Jane P. Frost had any relation to the attestation of the will in controversy; and hence the provision last referred to has no application to the case.

By § 83, the provisions of the five preceding sections shall not be applied to cases when, at the time of taking the testimony or the time of trial, the party prosecuting, or the party defending, or any one of them, is an executor or administrator, or made a party as heir of the deceased party.

Does Jane P. Frost fall within the provision last cited? Is either party in this suit an executor or administrator, upon a proper construction of this statute, or is she made a party as heir of a deceased party? The word "party" is used here, undoubtedly, in reference to a person, who can legally be a plaintiff or defendant, in the general sense of those terms, to a suit, in the character of executor, administrator, or as having been made such as heir of a deceased party. And the exception applies only to those suits when one or the other is in fact such as is mentioned in the provision. From the terms used, a person cannot be considered an executor when the whole controversy is in relation to the probate of the instrument, purporting to be a will, in which he is so named. If the will should not be approved, he never becomes an executor.

When an executor becomes a party to a suit, as such, he is supposed to represent his testator, and the controversy involved therein, to appertain to matters which transpired, during the life of the latter, with the surviving party, who has full knowledge thereof, while the executor is entirely ignorant of the facts. Hence we see the great propriety of the exception. But, if the exception should be held to embrace the case arising upon the probate of the will itself, the reasons therefor are not apparent.

The appellee has not, and cannot become the executor of the will in question, till its approval, so that he can be treated as falling within the provision of § 83.

In no sense can the deponent be treated as having been made a party as heir of a deceased party. She contests

the probate of the will, simply as the guardian of some of the heirs at law of William Frost, deceased, in the appellate Court of Probate. The deposition was admissible, under § 78, if otherwise competent.

At the trial in this Court, the husbands of two of the appellants, on being offered as witnesses, were excluded. Under the well settled principles of marital relations, this ruling was not erroneous.

The part excluded of the deposition of Wildes P. Walker was clearly inadmissible, and this point is not relied upon by the appellants in argument.

*Exceptions sustained, verdict set aside,*
*and new trial granted.*

RICE, APPLETON, GOODENOW, and DAVIS, J. J., concurred.