## ABBOTT v. JACKSON.

1. MARRIED WOMAN : *Partner in trade.*

A married woman may, under the Act of May 28, 1873, form a partnership as a sole trader with a 'third person other than her husband, and will, as to her separate property, be bound by all the contracts of the firm as effectually and to the same extent as if she were a man.

Abbott v. Jackson.

APPEAL from *Randolph* Circuit Court in Chancery.
Hon. J. G. FRIERSON Circuit Judge.

*N. & J. Erb,* for appellant.

Mrs. Jackson was engaged in business on her own account as a partner of Conner, and they bought the land as a partnership investment and it was used for partnership purposes. Being so used, it ought to be treated as personalty, and the $1000 invested by her can be entitled to no superior recognition or preference.

The Act of 1883 cures all defects in the acknowledgment of the mortgage. She was estopped, if not by her own acts and conduct, by those of the firm of which she was a member.

*W. F. Henderson,* for appellee.

The nature of Mrs. Jackson's estate prevented her from conveying her estate except as prescribed by statute. 15 *Ark.,* 479; 29 *Ib.,* 346; 30 *Ark.,* 30; 32 *Ib.,* 458.

The mortgage and note being void as to her, and she having put her money into the land, and being a joint tenant and owner with Connor, she had a preferred lien for the amount due her with interest.

Connor could not bind her by taking stock in a wild-cat concern, nor has she ever done any act by which she conveyed or bound her estate.

EAKIN, J. This is the same case which was before us at the May Term, 1880, under the style of *Connor, Ford's Adm. et als, v. Abbott,* (35 *Ark.,* 365), and then remanded for further proceedings, under such amendments as the parties might be advised to make.

Abbott filed an amended bill, stating that since the commencement of the action the mills and machinery of

the Fourche Manufacturing Company had been destroyed by fire, leaving only the lands, and a damaged Turbine wheel; that in the formation of the company the lands and mill had been valued at $16,000, for which stock was issued to the members of the company in shares of $100 each; that he himself took 25 shares, to be credited on a mortgage debt at the date of the acceptance of the stock, leaving a balance of his mortgage debt secured by 240 acres of land in the original mortgage, not sold to the Mill Co. and also by $6000 worth of shares in the Mill Company which he held as collateral, the same being the property of Webb Connor. The other owners of stock are designated and made parties showing their respective shares, one of them being Ford, one of the mortgage debtors, who has 30 shares. He prayed for a sale of the mill property, that the proceeds might be divided, *pro rata,* and that the amount coming to Webb Connor on the $6000 of stock which complainant held as collateral, should be applied to his mortgage debt, and further that his mortgage be foreclosed on the remaining 240 acres of land not owned by the company. So far the prayer is strictly in accordance with the former opinion of this court as to his rights. He prayed in addition that the proceeds on Ford's shares, who was as above stated, one of the mortgage debtors, should be applied to the debt. Ford had died and the suit was revived against his administrator. As to Mrs. Kate Martin, the suit was dismissed.

Afterwards, Mrs. Martin, who meanwhile had become a widow, and had intermarried with Jackson, came with her husband into court, and, by leave, they were made defendants for the purpose of filing a cross complaint. That set up an interest in Mrs. Jackson of a moiety of all the lands, alleging that they had been conveyed by

title deed to her and Connor from Ford; and that she had never parted with any of her interest to the manufacturing company or otherwise. They allege that the lands were not capable of division without deterioration of value, and pray that all may be sold together for partition.

The plaintiff answered this cross bill, setting up the facts, that Mrs. Martin and Connor had entered into partnership regarding the land and mill upon it, for the purposes of trade. That it had been sold (or rather 440 acres of it) to the Fourche Manufacturing Company for purposes of trade, or rather converted into the property of a joint stock company, by said firm of Connor & Co. That said firm, in which Mrs. Martin had a half interest received from the company for the land thus put in, the full amount of sixteen thousand dollars in paid up stock; which, under Connor's management, was all, or mostly, used; first, in paying off $3000 balance of the original purchase money; 2nd, in paying $2500, and making a collateral deposit of $6000 with Abbott to secure a loan which had been made to Connor & Co., of money which had been used in a great part, to improving the mill property; and, 3d, in paying off creditors of Connor & Co.

Upon hearing of the case upon evidence which does not materially affect the facts as set forth above, and in the former opinion, the Chancellor decreed a sale in separate lots, of the mill property, and the 240 acres originally purchased and not transferred to the company. He further found that Mrs. Martin had paid one thousand dollars of the purchase money to Ford, and that it had never been repaid to her. Sales of the property were made on time and the proceeds brought by the commissioner into court. In the final decree the court decreed

that Mrs. Martin (now Mrs. Jackson) should be repaid her $1000 with interest out of the proceeds of all the different lots according to a *pro rata*; as a preferred lien.

A decree for the mortgage debt less $2500 for the stock, and a further credit of $500, was rendered against Connor and the estate of Ford, with interest according to the face of the paper, amounting in the aggregate on the 18th of Aug., 1882, to $6752.38.

After paying Mrs. Jackson, it was decreed that all the money arising from the sale of the company's property be divided *pro rata* amongst the stockholders, in which division Abbott was to receive the dividends on the $6000 which he held as collateral and to credit the same on his judgment. The dividends on the $2500 of stock to be received as his own. It was also decreed that after paying the *pro rata* to be assessed for Mrs. Jackson as a part of her allowance of a thousand dollars, he should receive the whole of the proceeds of the sale of the 240 acre tract not belonging to the company. Abbott appeals.

The decree is only complained of in one particular; that it recognizes the right of Mrs. Jackson to withdraw from the proceeds of the lands the amount which she originally paid. We fail to perceive any sound principle to sustain this special provision of the decree. She does not ask rescission, and could not have it upon asking, since she has enjoyed the benefit of the purchase and does not propose to refund. A married woman may receive a conveyance, legal or equitable, although she cannot bind herself personally to pay the consideration. The vendor's lien, however, remains.

1. MAR-
RIED WO-
MAN:
May be
partner in
trade,

It is well settled too that a married woman under such statutes as that of April 28th, 1873 can form a partnership as a sole trader with a third person other than her husband, and will as to her property be bound by all the

Abbott v. Jackson.

contracts of the firm as effectually, and to the same extent, as if she were a man. *Newman v. Morris*, 52 *Miss.*, 402; *Schouler on H. & W. Sec.* 317; *Contr. of Mar. Women*, (by Kelly) *Chap. 6, Sec.* 16; *Bishop on Mar. Women, Vol.* 2.

This point was not decided in the former opinion. It is raised now by the plaintiff in opposition to a cross bill filed by Mrs. Jackson, claiming half of the whole proceeds of the sales as her own. She is *actor* now, and must offer to do equity. She had gone out on the former decision as defendant, upon the ground (as then appeared) that she was not bound by the note or mortgage to Abbott. The latter, in obedience to the mandate of this court, had amended his bill to wind up the affairs of the Fourche Company, and have the proceeds applied, *pro rata,* to the stockholders. His object was to realize the most he could on the note through his own stock and that which he held as collateral. Mrs. Jackson comes in by leave again and claims half those proceeds. He had the right to show that she was not equitably entitled to them.

Whatever may have been the object in buying the lands from Ford, nothing was done before the passage of the Act of April 28th, 1873, or at least very little. Either from that date, or afterwards, there existed a partnership between her and Connor, under the firm name of Connor & Co. Her husband had no interest in it. She was a sole trader, and was liable for all proper debts of the firm. She united in borrowing money from Abbott for mill purposes. It is the law of this case now, announced upon a transcript which did not fully reveal all the facts, that she is not bound by that note, legally, nor by the mortgage, yet it cannot be held, equitably, that she may repudiate payments made with her assent express or implied, upon that debt.

Whilst the land was still bound to Ford for $3000 the

firm of Connor & Co., unite with others and put a part of the land into a joint stock company, agreeing to take for it $16,000 of paid up stock, and continue the business. This paid up stock was almost wholly applied to paying balance to Ford, which relieved her of the lien, in paying part of Abbott's debt, in giving Abbott collaterals which satisfied him in full as to all claims against the partnership property, and in paying large debts of the firm for which she was bound. She was present on the place all the while, and made no objection; was sued with her husband and made none, on this point; became discovert and made none; married again, and being it seems, first advised by the opinion of this court that she was not bound by the note and mortgage to Abbott, now avails herself of that position to claim half the proceeds of the sale of the mill property. It is a *non sequitur*. She may be bound neither on the note or mortgage, and still may have so acted through her partner as to vest an unincumbered title in the company which paid her and her partner full value for the property and continued the business with Connor & Co., still remaining partners.

It would be so palpably and grossly inequitable to the members who formed the company to now allow her to reclaim a moiety of the property, without any offer to refund, that the mere statement of the case carries conviction.

It does not improve her equity in the least that she paid in a thousand dollars, and got nothing back. *Feme covert* traders must incur the risks of trade. Those with whom they deal are not insurers against loss.

We see no reason, however, why she cannot have half the proceeds of the 240 acres in another tract. That was never put in the Fourche Co., and with regard to it she and Connor were tenants in common. It is as we have

said the law of this case that the mortgage as to her was void. The decree must be corrected in this also. Defendant did not appeal on this point, but may have been satisfied with the whole decree. If the appellant is allowed the correction of the error as to the $1000 it is fit that he should be compelled to correct errors for which the $1000 may have been taken as compensation.

Affirm the decree in all respects save in the points above indicated, and remand with directions to the court below in administering the proceeds of sale to pay *all* the products of the sales of the Fourche Co. property to the stockholders, *pro rata,* in the manner' already provided after the court below had erroneously deducted the $1000 for Mrs. Jackson. If the dividends of Abbott's own stock and that which he holds as collateral may not pay the debt, he may then exhaust half the proceeds of the sale of the 240-acre tract. The other moiety from that tract will be adjudged to Mrs. Jackson. Of course there may be execution for the balance. The costs below will still be in the discretion of the Chancellor. The costs of this proceeding will be here against the appellees.