OF THE

STATE OF WASHINGTON,

AT THE

# MAY SESSION, 1892.

[No. 311.   Decided May 11, 1892.]

THE BOARD OF TRADE OF THE CITY OF SEATTLE (a corporation), I. R. DAWSON, RISDON-CAHN COMPANY, AND J. H. ALLEN, *Respondents*, v. MARY HAYDEN, *Appellant*.

### HUSBAND AND WIFE—PARTNERSHIP.

The provisions of Code 1881, ch. 183, which give a married woman the right to enter into contracts and manage her separate property do not empower her to make a contract of partnership with her husband. (DUNBAR, J., dissents.)

*Appeal from Superior Court, Whatcom County.*

The facts are stated in the opinion.

*Slade, Hadley & Hadley,* and *Bruce & Brown,* for appellant.

*Dorr & Finch, Strudwick, Peters & Van Wyck, Fairchild & Rawson,* and *Allen & Powell,* for respondents.

The opinion of the court was delivered by

STILES, J.—These were four cases the trials of which were consolidated.   In two of the cases the theory of the

complaints was that appellant and her husband were actual partners in the mercantile business under the firm name of J. P. Hayden & Co.   In the other two the theory was that the community composed of the husband and wife was carrying on business, and that the husband and wife were its agents.   The evidence did not tend to support either theory as pleaded, but was directed wholly to an effort to show that J. P. Hayden was doing business under the name of J. P. Hayden & Co., and that appellant made herself liable as a partner by "holding out."   The real object in making appellant a party, and taking judgment against her, was to subject certain real estate which she claims is her separate property, to the payment of debts incurred by J. P. Hayden & Co.   The main question involved is, Can a husband and wife become partners in trade in this state?   It is claimed that they may under the act of November 21, 1881, commonly known as chapter 183 of the code of that year.   Of that chapter the following sections are supposed to be especially pertinent to the matter in hand:

"SEC 2396.  Every married person shall hereafter have the same right and liberty to acquire, hold, enjoy and dispose of every species of property, and to sue and be sued, as if he or she were unmarried."

"SEC. 2398.  All laws which impose or recognize civil disabilities upon a wife, which are not imposed or recognized as existing as to the husband, are hereby abolished, and for any unjust usurpation of her natural or property rights, she shall have the same right to appeal in her own individual name, to the courts of law or equity for redress and protection that the husband has."

"SEC. 2400.  The property and pecuniary rights of every married woman at the time of her marriage, or afterwards acquired by gift, devise or inheritance, with the rents, issues and profits thereof, shall not be subject to the debts or contracts of her husband, and she may manage, lease, sell, convey, encumber or devise by will such property to the same extent and in the same manner that her husband can property belonging to him."

"SEC. 2401. Should either husband or wife obtain possession or control of property belonging to the other, either before or after marriage, the owner of the property may maintain an action therefor, or for any right growing out of the same, in the same manner and to the same extent as if they were unmarried."

"SEC. 2406. Contracts may be made by a wife and liabilities incurred, and the same may be enforced by or against her to the same extent and in the same manner as if she were unmarried."

Prior to the act of 1881, but for the acts commencing in 1869, the common law would have regulated the property rights of husband and wife. It did then and still does regulate them excepting so far as the statute has directed otherwise; and notwithstanding that this act provides in § 2417 that the "rule of common law that statutes in derogation thereof are to be strictly construed has no application to this act," it is not to be supposed that the legislature intended or proposed to extend the scope of the act beyond the language used further than the implications naturally flowing therefrom. At the common law a wife could not be a partner in business with anyone, because partnership is based on a contract, as to which she was under a disability, and yet in equity she had always been permitted to enforce contracts made for her benefit, even with her husband, and her claim against him as her debtor had always been sustained. Story, Eq. Jur., §§ 1372, 1373; *Valensin v. Valensin*, 28 Fed. Rep. 599; *Clark v. Hezekiah*, 24 Fed. Rep. 663; *Huber v. Huber's Admr.*, 10 Ohio, 372. She could have a separate estate, meaning an equitable estate held by a third person in trust for her. This estate she could charge in equity, but not at law. Judgments upon her debts went not against her person, when allowed at law, but were allowed as equitable burdens upon her estate or personal property in possession at the time of the marriage and that acquired afterward; her choses in action when

reduced to possession, and her earnings became her husband's; in her freeholds and lands in fee the husband took a life estate; he became liable for her antenuptial debts and jointly with her for her torts during coverture; her responsibility at law for contracts was entirely suspended; and in equity, before the courts would hear anything against her, it must appear that she was possessed of a separate estate in the common law sense. Now this act of 1881 does certain things for a married woman: *First*, It gives her full dominion over her own property whether acquired before or after marriage, to enjoy and dispose of it without the intervention of her husband, or responsibility for him or his debts; *second*, it removes from her all civil disabilities not imposed upon her husband; *third*, she can sue and be sued as if she were unmarried, either at law or in equity; *fourth*, for her debts she alone is responsible; *fifth*, her property is chargeable with family expenses. In short, the purpose of the act seems to be to set her free from all influence or dominion of her husband in so far as her property rights are concerned, and leave her to manage, control and dispose of them as she pleases, whether to her gain or loss.

In this opinion we shall not discuss the question how large her power is, but confine ourselves to the single matter before us. Counsel for respondents contend that, as it is the evident purpose of these provisions to emancipate the wife from the control of the husband, and to enfranchise her with the power, denied to her under the common law, to acquire, hold, enjoy and dispose of property, and do business on her own account as freely as he can, or even more freely than he can, under the same act, it must follow that she can enter into a contract of partnership in all the ways, and with all the liabilities that her husband can, and that unless she is permitted and held to be able to enter into the same contracts with him that she can with others, she is deprived of the full measure of liberty which

the law intends to confer upon her. It may be said that she can and in some case will be held to become a general partner with third persons under the terms of the act, and the necessary implications thereof. It has been so held in *Newman v. Morris*, 52 Miss. 402; *Abbott v. Jackson*, 43 Ark. 212, and elsewhere, when no one of the persons engaged with her as partners was her husband. But the question still remains, does the statute intend that she can enter into ordinary contracts with her husband, and particularly the contract of partnership? On this point we think the position of the respondents is antagonistic to itself. In the foreground of the discussion is placed the proposition that the purpose of the statute is to free the wife from the control and influence of her husband, and to relieve her property from his debts and management; but the next following suggestion, that unless she can become his partner she will not be wholly free, if yielded to will place her and her property within touch of the very dangers which it is sought in the first place to withdraw her from. Her improvident husband, by the most ordinary persuasion, or by his mere declaration made in her presence, as in the case at bar, could, in spite of her, unless she assumed a hostility, which would endanger the continuance of the marriage relation, waste and dissipate her entire estate, and thus the very purpose which, it seems to us, stands out the most clearly in the act in question, *i. e.*, to secure her protection in the management and enjoyment of her estate, would be defeated.

In Massachusetts, the married woman's property acts, which existed until 1874, when the legislature expressly forbade husband and wife to contract, provided: "Any woman may, while married, bargain, sell and convey her real and personal property, which may be her sole and separate property, or which may hereafter come to her by descent, devise, bequest or gift of any person, except

her husband, and enter into *any contract* in reference to the same, in the same manner as if she were *sole;*" and "any married woman may carry on any trade or business, and perform any labor or services on her own, sole and separate account; and the earnings of any married woman from her trade, business, labors or services shall be her sole and separate property, and may be used and invested by her in her own name; and she may sue and be sued as if *sole* in regard to her trade, business, etc., and her property acquired by her or her trade, etc., may be taken on any execution against her." This act covers every material point of our own, and notably the wife is permitted to make "any contract" in reference to her property; which is all that any person can do. But in *Lord v. Parker*, 3 Allen, 127, it was held that she could not be a partner in a firm where her husband was a partner. Speaking of the statutes, the court said:

"Their legal object is to enable married women to acquire, possess and manage property, without the intervention of a trustee, free from the interference or control, and without liability for the debts, of their husbands. They are in derogation of the common law, and certainly are not to be extended by construction. And we cannot perceive in them any intention to confer upon a married woman the power to make any contract with her husband, or to convey to him any property, or receive any conveyance from him. The power to form a copartnership includes the power to create a community of property, with a joint power of disposal and a mutual liability for the contracts and acts of all the partners. To enter into a partnership in business with her husband would subject her property to his control in a manner hardly consistent with the separation which it is the purpose of the statute to secure, and might subject her to an indefinite liability for his engagements. The property invested in such an enterprise would cease to be her "sole and separate" property. The power to arrange the terms of such a contract would open a wide door to fraud in relation to the property of the husband.

If she could contract with her husband, it would seem to follow that she could sue him and be sued by him. How such suits could be conducted, with the incidents in respect to discovery, the right of parties to testify, and to call the opposite party as a witness, without interfering with the rule as to private communications between the husband and wife, it is not easy to perceive; and the consequences which would follow in respect to process for the enforcement of rights fixed by a judgment, arrest, imprisonment, charges of fraud, proceedings *in invitum* under the insolvent laws, and the like, are not of a character to be readily reconciled with the marital relation. We cannot suppose that an alteration in the law involving such momentous results, and a change so radical, could have been contemplated by the legislature, without a much more direct and clear manifestation of its will."

To the same effect is the construction of the similar statute by the supreme court of the State of Maine, *Smith v. Gorman*, 41 Me. 405; *McKeen v. Frost*, 46 Me. 239. In Michigan, Howell's Stat., § 6295, provides that the separate property and estate of a married woman "may be contracted, sold, transferred, mortgaged, conveyed, devised or bequeathed to her, in the same manner and with the like effect as if she were unmarried." And § 6297 provides that "actions may be brought by and against her in relation to her *sole* property, in the same manner as if she were unmarried." It is true that these provisions in the Michigan statute (and those of several other states) speak particularly only of her separate estate, but her separate estate is by § 6295 expressly defined to be the same as thaf which is equally her separate property in this state; but if she be thus enabled to contract with absolute freedom in reference to her separate estate, then, according to the logic of respondent's argument, her freedom in that respect would be unlawfully curtailed by holding that she could not contract with reference thereto with her husband. Yet the supreme court of Michigan, in *Artman v. Ferguson*, 73 Mich. 146 (16

Am. St. Rep. 572); after alluding to decisions in other states where it is held that a married woman may be, where she has separate estate, a partner with persons other than her husband, uses this language:

"It is the purpose of these statutes to secure to a married woman the right to acquire and hold property separate from her husband, and free from his influence and control, and if she might enter into a business partnership with her husband it would subject her property to his control in a manner wholly inconsistent with the separation which it is the purpose of the statute to secure, and might subject her to an indefinite liability for his engagements. A contract of partnership with her husband is not included within the power granted by our statute to married women. This doctrine was laid down in *Bassett v. Shepardson*, 52 Mich. 3, and we see no reason for departing from it. The important and sacred relations between man and wife, which lie at the very foundation of civilized society, are not to be disturbed and destroyed by contentions whch may arise from such a community of property and a joint power of disposal and a mutual liability for the contracts and obligations of each other."

In Indiana, under the third section of the act of March 25, 1879, it was provided that a married woman might enter into *any contract* in reference to her separate personal estate, trade, business, labor or services, and the management and improvement of her separate real property, the same as if she were *sole*, and her separate estate, real and personal, should be held liable and on execution sold. But in *Haas v. Shaw*, 91 Ind. 384, 46 Am. Rep. 607, and in *Scarlett v. Snodgrass*, 92 Ind. 262, it was distinctly held that she could not bind herself by a contract of copartnership with her husband. These citations from eminent courts are sustained in Schouler's Husband and Wife, § 317, and 2 Bish. Married Women, § 435.

Opposed to these adjudications counsel cites us to a line of authorities of which *May v. May*, 9 Neb. 31, 31 Am.

Rep. 399), is a sample.   There a husband made and delivered his promissory note to a third party, who endorsed and delivered it to the maker's wife, and a second note he made directly to his wife.   She brought an action at law against him on both notes, and the court held that the demurrer of the wife to the husband's answer setting up the marriage of the parties in the nature of a plea of abatement should have been sustained.   The statutes of that state with regard to the separate property of married women are substantially the same as our own, and we see no reason for dissenting from the views therein expressed, and the conclusions therein arrived at.   The holding of the court was in effect simply to substitute an action at law for a suit in equity.   In its decision, on page 226, the court said:

"Even under the old system of practice, and before the beneficent legislation defining the rights of married women herein quoted, this could have been done by resorting to the circuity of proceeding in the name of a trustee and a court of equity.   But now not only is the administration of law and equity vested in the one court, but all forms of procedure which heretofore distinguished legal and equitable suits are abolished, and the need of the intervention of a trustee is done away with by the statute which provides that 'every action must be prosecuted in the name of the real party in interest.' "

But, notwithstanding these cases, and the doctrine established by them, no case is cited, and we have not been able to find one in which either husband or wife has been permitted either at law or in equity to enforce a purely executory contract against the other, and in that lies the kernel of this controversy, becase such a contract must be enforcible by both parties, and at its beginning it is entirely executory.   The terms of the partnership may be that it shall continue for a certain length of time, that certain capital shall be invested, that the services of the parties to the contract shall be devoted to the business of the

partnership, that the profits and losses of the business shall be divided equally or in certain proportions, and many others, all of which are executory, and some of which are absolutely indispensable to the prosecution of any partnership business to advantage.   It is also insisted, and citations are made to authorities to show that the husband and wife in states where the doctrine of community property prevails, are in a sense partners at all events.   One of the citations is *Fuller v. Ferguson*, 26 Cal. 547, and another is Schmidt's Civil Law of Spain and Mexico, but turning to *Fuller v. Ferguson*, page 567, we find this language:

"The law recognizes a partnership between the husband and wife as to the property acquired *during* marriage, and which exists until expressly renounced in the manner prescribed.   To this community or partnership belongs: *First,* All the property, of whatever nature, which the spouses acquire by their own labor and industry.   *Second,* The fruits and income of the individual property of the husband and wife.   *Third,* Whatever the husband gains by the exercise of a profession or office.   *Fourth,* The gains from the money of the spouses, although the capital is the separate property of one of them."

It is scarcely necessary to say that because the relation of husband and wife as to their common property is likened to a partnership, the reason for the similitude is totally wanting when their separate property is concerned.

But the respondent produces two decisions of New York and Mississippi, respectively, which expressly hold that a husband and wife may be partners.   *Suau v. Caffe*, 122 N. Y. 308; *Toof v. Brewer* (Miss., Feb. 20, 1888), 3 South Rep. 571.   The statutes of New York governing the former case were almost identical with those of Massachusetts above quoted.   Husband and wife filed a certificate by which they assumed to form a limited partnership under the firm name of "George Caffe;" the husband was the general and the wife the special partner, she contributing

twenty-five thousand dollars. The firm became indebted, and both husband and wife were sued. The court, after reviewing New York cases only, said:

"Upon principle and authority, we think that when a husband and wife assume to carry on a business as partners, and contract debts in the course of it, the wife cannot escape liability on the ground of coverture."

This, as is seen by the facts above stated, was an extreme case in which the wife had by a solemn instrument placed upon file among public records, shown her intention of assuming a partnership relation with her husband, and contributing to the firm large sums of money. Whether or not the firm was insolvent is not disclosed; all that appears is that she was retained as a party to the action. But we find that of the seven judges of the New York court of appeals but four joined in the opinion while three dissent on the very point in question. HAIGHT, J., in his dissenting opinion, reviews the course of decision in the State of New York, as well as in other states, and comes to the conclusion which is, we think, unassailable, that the majority opinion was wrong. The decision in this case is to us a curious one, inasmuch as we find the same court, only one year previous, in the case of *Hendricks v. Isaacs*, 117 N. Y. 411 (15 Am. St. Rep. 524), holding by a unanimous court that under these same statutes a husband and wife could not contract with each other at all. *Toof v. Brewer* was a controversy which was controlled by the statutes of Arkansas, which are again almost exact duplicates of those of Massachusetts. The court after alluding to *Abbott v. Jackson*, 43 Ark. 212, in which it was held that a married woman could become a partner as a sole trader with a third person other than her husband, and would as to her property be bound by all the contracts of the firm as effectually and to the same extent as if she were a man, discusses cases in Massachusetts, New York and other states, and comes to the conclusion that a

18—4 WASH.

married woman under the law of Arkansas could also become the business partner of her husband. Just why it becomes necessary for the court in this case to decide this question is not clear from the report. It is said that the Brewers, husband and wife, were carrying on planting operations in Arkansas, and Toof and others made to them advances of supplies. After this the Brewers moved to Tennessee, and there gave to Toof and others four notes in payment of the indebtedness due them, in which notes Mrs. Brewer *charged her separate estate* for their payment. From this it would seem that the question of partnership was not necessarily involved in the case, but that the real question was whether upon her note which assumed to expressly charge her separate estate, a personal judgment at law should be entered against her. The case of *Wells v. Caywood*, 3 Col. 489, is also cited by respondents, and the general language used by the court in that case, on p. 494, is abundantly broad enough to support the citation were it not that the point in issue had no analogy whatever to that of the case at bar. We conclude upon the whole that the better reason as well as authority is with the position that these married women's statutes generally agree on their material points, and that it was not intended thereby that a husband and wife could become partners.

But in our statutes there are one or two provisions which we think make this position clearer than it is, perhaps, in any of the others. Sec. 2397 substantially makes each of them, as to all transactions between them, a trustee for the other. The burden of proof, as between them, is upon the party asserting the good faith. Persons who are free to contract with each other are not subject to such a rule. They stand at arms' length, and unless there is actual fraud the law gives no relief. Again, it would seem that if husband and wife are at liberty to contract with each other with perfect freedom, as strangers, the provisions of § 2416

would have been left out. By that section husband and wife, when they attempt to make any agreement as to the *status* or disposition of the community property, must do so by the execution of an instrument in writing, and under seal, which must be acknowledged and certified, as a deed to real estate. Why so much solemnity with regard to her interest in community property, and such looseness and absolute want of protection with regard to her separate property, which, it is conceded by all, it was the first purpose of this act to secure to her?

The case at bar is, perhaps, as strong an example as experience could produce of the evil effects of such a construction of this statute as is contended for by respondents. The wife held certain real estate which she claims is her eparate property—it is all she has. The husband engaged in a mercantile business in a building built by her upon her land, and painted over the door a sign, "J. P. Hayden & Co." He went to Seattle to buy goods for his stock, and his wife went with him. In a certain store where he was about to make some purchases he was asked who constituted the firm. His answer was: "My wife is the only partner I have." She sat within a few feet of where this was said, and the witness who testified to the statement of Mr. Hayden thought she might have heard what he said. Again, a traveling agent for a firm in San Francisco, who sought to sell Hayden goods, when in the store at Fairhaven, asked a question similar to the one asked in Seattle, and received a similar answer; and on this occasion Mrs. Hayden was sitting at a desk in the view of the two men, and again the testimony was that she might have heard what her husband said. The jury found as a special verdict that these were the only two men to whom any such statement was made, although others were testified to. Yet upon this testimony, and some other of as slight moment, and because, as it is said, the wife remained

silent and did not deny what her husband said in her hearing, she was held to be a general partner by "holding out," and a judgment was rendered against her not only for the claims of the two firms to whose representatives her husband had said that she was his partner, but also for the claims of eighteen or twenty other firms, none of whom, with the exception of one or two, pretended to have heard that she was in any wise interested in the business, or that she existed as the wife of J. P. Hayden.

It is clear that to sustain such a judgment would be to render the estate of every married woman wholly unsafe, and all but destroy the most beneficial purpose designed to be subserved by the statute as we understand it.

Judgment reversed, and cause dismissed.

ANDERS, C. J., and HOYT, J., concur.


SCOTT, J. (*concurring*).—I concur in holding that a husband and wife cannot enter into a partnership with each other to carry on a business. This is the law in most of the states, and all arguments advanced in favor of such a holding elsewhere, in so far as their laws relating to the removal of the disabilities of married women are like our own, derive much greater force in a state where community property laws prevail as here. Our statutes recognize but two kinds of property which can be held or owned by married persons—separate property and community property. The statutes point out how this property may be acquired and define what it is, according to the manner and time in which it is acquired. The property and pecuniary rights of every married woman at the time of her marriage, or afterwards acquired by gift, devise or inheritance, with the rents, issues and profits thereof, is her separate property, and the same is true with regard to like property owned by the husband. Section 1399, Gen. Stat. (former § 2409), provides that all property not acquired as prescribed in any one of the ways mentioned, which is acquired after

marriage by either husband or wife, or both, is community property. It has been held that their interests in this community property are indissoluble, during the existence of the community, to the extent that the interests of either therein cannot be reached separately by any third party. The interest of each in the property is equal, and it would not be contended that by any mutual arrangement between themselves they could provide that either should have a lesser interest than the other in said property without destroying its community character.

Sec. 1401, Gen. Stat., provides that "nothing contained in any of the provisions of this chapter, or in any law of this state, shall prevent the husband and wife from jointly entering into any agreement concerning the *status*, or disposition of the whole or any portion of the community property then owned by them, or afterwards to be acquired, to take effect upon the death of either." This seems to me to clearly preclude the idea of their entering into any such agreement, affecting their property interests, to take effect prior to the dissolution of the community, except as expressly provided otherwise. Sec. 1443, Gen. Stat., authorizes the direct conveyance, by one to the other, of his or her interest in all or any portion of their community real property, which thereby becomes the separate property of the grantee, but it is apparent that such a deed to be effectual must convey the entire interest of the grantor in the property, designated in the deed, from the one spouse to the other. No lesser or partial interest of the grantor could be conveyed in any event, because this would have the effect of destroying its community character, and leave it neither separate or community, which would effect a result the law does not contemplate. If a husband and wife can become partners in business they can form the same kind of a partnership that other persons can, and enter into an agreement whereby one could take a small interest in the business and the profits thereof, and the

other the larger one. The property acquired through the pursuance of this business would not come under either head of the two classes recognized; it could not be held to be separate property, for it would not be acquired in any one of the ways specified, and it could not be community property because, as said, in community property their interests must be equal, while, according to the partnership contract, their interests might be very unequal. This would create a third species of property owned by husband and wife which the law does not recognize. It seems to me to be clearly the intention of the law that only the two species of property can belong to the community, or to either of its members; that the law is a limitation in this respect and will not permit the holding or ownership of any other kind of property than that which is designated as separate and that which is designated as community, and the distinguishing features of its acquisition have been clearly pointed out and define its character; especially for these reasons I think that in this state, where community property laws obtain, that it would be contrary to the whole law on this subject to permit the husband and wife to enter into any contract or agreement whereby they might acquire property of a character other or different from that specified, which the law expressly permits them to hold and enjoy. It is true we have some statutes which, construed without reference to others, would seem to allow the wife to enter into any contract, and which remove all restrictions in this respect; I think our statute law upon this subject goes to a greater extent than that of the states from which the cases have been cited.

Sec. 1408 of the Gen. Stat. (§ 2396 of the 1881 Code) provides that every married person shall hereafter have the same right and liberty to acquire, hold, enjoy and dispose of every species of property, and to sue and be sued as if he or she were unmarried, and § 1410 (§ 2406 of the 1881 Code) provides that contracts may be made by a wife

and liabilities incurred, and the same may be enforced by
or against her to the same extent and in the same manner
as if she were unmarried; yet when considered in connec-
tion with our other laws relating to the property rights of
married persons, it is apparent that they are considerably
restricted thereby, and it would be wholly incompatible
and inconsistent with such other provisions to hold that a
husband and wife could enter into any joint arrange-
ment or agreement between themselves creating a different
kind of ownership in property from the ones specified, to
take effect before the death of either, and it would be
strongly against public policy to allow them so to do, and
thus likely give rise to interminable and unfathomable
complications.

Our laws cannot, in accordance with recognized rules of
construction, be held to authorize the husband and wife to
enter into a partnership with each other for the purpose
of trade or business, although it may be possible they
might form some particular kind of an agreement for such
a purpose which might not conflict with their rights of
property as defined by the statutes. This is very doubtful,
however, and when considered in all its bearings with the
rights, duties and liabilities of partners to each other and
to creditors, it is evident that it is not the intent of the law
to confer any such authority upon them. The effect that
such an arrangement might have or must necessarily
have upon their property rights as classified is the strongest
argument that can be advanced against the position of the
respondents, as it would destroy the distinction between
the classes of property they may own as declared by the
statutes.

Sec. 1444, Gen. Stat., provides that a husband or wife
may appoint the other attorney in fact with full power to
sell, convey and encumber his or her separate estate, both
real and personal, and § 1446 makes similar provision with
regard to their community property, and with § 1443,

further assisted by the broad scope of §§ 1408 and 1410, practically subjects the wife to the influence of the husband as to the disposition and control of her property, separate or community, it seems to me as fully as any partnership agreement between them could possibly effect, and I should be forced to the conclusion that they might become partners in trade with each other were it not for the statutes prescribing and defining the kinds of property a husband and wife may own and acquire. It is a matter of experience that their property rights and relations become complicated at best under the practical workings of the law as expressed and interpreted, and as a matter of public policy it would be very undesirable to still further allow them to become involved in mercantile partnership relations with all its possible resulting consequences, conflicts and complications.

DUNBAR, J. (*dissenting*).—I dissent. It seems to me that the decision in this case is another instance (too common in the history of the courts of the United States) of the judicial repeal of a statute. It is not only a fundamental principle of our government, well understood and universally recognized, that the legislative and judicial departments of the government must be kept distinct and separate, but the first warning note sounded by all writers on statutory interpretation is that when the language of a statute is plain and unambiguous, the duty of interpretation by the court does not arise. Sec. 2396 provides that "every married person shall hereafter have the same right and liberty to acquire, hold, enjoy and dispose of every species of property, and to sue and be sued, as if he or she were unmarried." There seems to be nothing ambiguous or doubtful in the language or provisions of this statute, and, applying any and every known rule of interpretation to it, we must conclude that there is no room for construction and that the only duty of the court is to declare it the

law, and to decree its enforcement.   The real intention of
the lawmakers must be gathered from what they say, and
where the language is not technical it must be given its
ordinary and popular meaning.   The statute provides that
"every married person can enjoy and dispose of every
species of property as if he or she were unmarried;" is
there anything doubtful or ambiguous about that language?
Could language be more plain, pointed or incisive?   Could
the idea of unrestricted enjoyment of one's property be
expressed more tersely, plainly and emphatically?   There
are no provisos, and no exceptions expressed.   What right,
then, has the court to step in and under the guise of con-
struction, inject a limitation which the legislature did not
provide for, and which in effect renders nugatory the law
passed by that body?   It is an easy but a dangerous thing
for courts to wander off in hazy theories and speculations
concerning what the legislature meant, and to base their
conclusions on the policy or impolicy of the law.   This
should only be done when the patent ambiguity of the law
compels it.   And here, in support of what I have said, I
desire to quote from Endlich on the Interpretation of
Statutes, § 4, which is the embodiment of the authorities
upon this subject:

"When, indeed, the language is not only plain but ad-
mits of but one meaning, the task of interpretation can
hardly be said to arise, and 'those incidental rules which
are mere aids, to be invoked when the meaning is clouded,
are not to be regarded.'   It is not allowable, says Vattel,
to interpret what has no need of interpretation.   *Absoluta
sententia expositore non eget.*   Such language best declares,
without more, the intention of the lawgiver, and is de-
cisive of it.   The legislature must be intended to mean
what it has plainly expressed, and consequently there is
no room for construction.   It is, therefore, only in the con-
struction of statutes whose terms give rise to some am-
biguity, or whose grammatical construction is doubtful,
that courts can exercise the power of controlling the

language in order to give effect to what they suppose to have been the real intention of the lawmakers. Where the words of a statute are plainly expressive of an intent, not rendered dubious by the context, the interpretation must conform to and carry out that intent. It matters not in such a case what the consequences may be. 'It has, therefore, been distinctly stated from early times down to the present day, that judges are not to mould the language of statutes in order to meet an alleged convenience or an alleged equity; are not to be influenced by any notions of hardship, or of what in their view is right and reasonable or is prejudicial to society; are not to alter clear words, though the legislature may not have contemplated the consequences of using them; are not to tamper with words for the purpose of giving them a construction which is "supposed to be more consonant with justice" than their ordinary meaning.' Where, by the use of clear and unequivocal language, capable of only one meaning, anything is enacted by the legislature, it must be enforced, even though it be absurd or mischievous. If the words go beyond what was probably the intention, effect must nevertheless be given to them. They cannot be construed, contrary to their meaning, as embracing or excluding cases merely because no good reason appears why they should be excluded or embraced. However unjust, arbitrary or inconvenient the intention conveyed may be, it must receive its full effect. Indeed, it is said that it is only when all other means of ascertaining the legislative intent fail, that courts may look to the effects of a law in order to influence their construction of it. But, whilst it may be conceded that, where its provisions are ambiguous and the legislative intent is doubtful, the effect of several possible constructions may be looked at, in order to determine the choice, it is very certain, that when once the intention is plain, it is not the province of a court to scan its wisdom or its policy. Its duty is not to make the law reasonable, but to expound it as it stands according to the real sense of the words."

And yet the majority, by an argument based on the supposed hardships which would be imposed upon married women, have come to the conclusion that the legislature

did not mean what it plainly said. And if the language of § 2396 could possibly be tortured into anything doubtful, § 2406 plainly shows that the legislative intent was to remove all civil disabilities so far as property rights are concerned, when it provides that "contracts may be made by a wife and liabilities incurred, and the same may be enforced by or against her to the same extent and in the same manner as if she were unmarried." The legislature evidently understood the full scope of the law it was enacting and its far-reaching effects, and where in its opinion the limitation was necessary it provided for it, as in the proviso to § 2398 that "nothing in this chapter shall be construed to confer upon the wife any right to vote or hold office, except as otherwise provided by law." Had it intended the law to operate as claimed by the majority it would evidently have incorporated a proviso in § 2406 substantially as follows: "*Provided,* No married woman shall enter into a contract of partnership with her husband." But it is left for the court to enact this proviso by judicial construction, something very near approaching, in my opinion, a judicial enactment.

As showing the danger of leaving the plain provisions of the statutory law, I note the fact that the majority recite at length the provisions of the common law, and draw deductions from its analogies, when the act in question, to avoid the very thing which the court now insists on doing, provides especially in § 2417 that the "rule of common law that statutes in derogation thereof are to be strictly construed has no application to this chapter. This chapter establishes the law of this territory respecting the subject to which it relates, and its provisions and all proceedings under it shall be liberally construed with a view to effect its object." The legislature evidently attempted to emancipate this law from the rule of construction now insisted upon by the court; and the plain rule of construction pro-

vided by the legislature is waved aside by the remark that "it is not to be supposed that the legislature intended or proposed to extend the scope of the act beyond the language used further than the implications naturally flowing therefrom." I think that it is to be presumed that the legislature realized the fact that it was enacting a statute in derogation of the common law, and that it did not want the law hampered by the rule of construction mentioned. It seems to me that the language of § 2417 is also so plain that there is no room for construction. In fact, it seems that if the plain provisions of this law can be argued out of existence, all the laws of the state are at the mercy of judicial construction.

I am unable to see in what way the enactments of § 2397 and § 2416 sustain the theory of the majority. It is perfectly competent for the law to provide who shall be subject to the burden of proof in any given transaction, nor is it by any means a new provision of the law. It is especially a wise provision in this instance and can in no way, that I can perceive, throw any light on the subject discussed.

So far as § 2416 is concerned, there is the very best of reasons why transactions concerning community property should be attended with solemnity and certainty; both parties have an interest in such property, and delicate relations exist which do not exist at all concerning the separate property of either of the spouses. The separate property is more independent, and the fact that the law imposes these solemn protections upon community property and not upon separate property would rather strengthen the idea that the use of separate property was entirely unrestricted. The fact is that for many years the law, in obedience to popular demand, growing out of feudal education, stood *in loco parentis* to woman; she was regarded as not being able to transact business, and had to act under a trustee or guardian. Advancing thought has

demanded other legislation, and woman's independence and capability have been recognized by the legislation of different states in different degrees. In this state I think the legislature has seen fit to grant to a married woman an untrammeled control of her separate property. The law presumes that she is capable of protecting her own property, and it is not in my opinion the duty of the court now to assume to stand *in loco parentis* or to sally forth in Quixotic zeal to relieve women from conjugal oppressors, or from burdens real or imaginary. It is argued by the majority that the case at bar is an instance of the evil effect of the construction contended for by respondents, because the wife was held to be a partner by "holding out," when the testimony did not justify such a conclusion. This argument, in my opinion, is entirely without force, and will apply equally to nearly every law on the statute books. Juries are continually rendering verdicts, and courts entering judgments, based on inadequate testimony; it is simply a question of fact to be tried as any other question of fact is to be tried.