SAMUEL vs. ESTATE OF JOHN THOMAS.

*March 7 — March 24, 1881.*

ESTATES OF DECEDENTS.   *What expenses before administration chargeable against estate.*

1. Only such necessary expenses for the funeral of a deceased person, and the care of his estate, as cannot properly be postponed until an administrator shall be appointed, are chargeable against the estate.
2. In this case, no administrator having been appointed until five or six months after the death of T., the plaintiff, his sister, expended over $500

Samuel vs. Estate of John Thomas.

for a tombstone and curbing for his grave, and for memorial cards. The administrator having declined to repay these sums without an order of the court: *Held*, that such order was properly refused.

3. The fact that the deceased was under legal guardianship as an insane person, and that after his death the guardian approved 'the expenditures, does not affect the rule.

APPEAL from the Circuit Court for *Racine* County.

*Mrs. Samuel* presented to the county court of said county a petition that she be allowed, out of the estate above named, certain money expended by her for the purposes and under the circumstances hereinafter mentioned. The material facts alleged in the petition are as follows: In September, 1875, the deceased, John Thomas, was duly adjudged to be insane, and William W. Vaughn was duly appointed guardian of his person and estate; and thereafter acted as such guardian. Prior to his becoming insane, the relations between the deceased and *Mrs. Samuel* (who was his sister) had for many years been most intimate, and he was accustomed "to counsel with her and to rely upon her for advice, for comfort in sickness, and for aid and assistance in all positions in which he might be placed." Knowing these relations, the guardian availed himself largely of the aid of *Mrs. Samuel* in the care of the deceased, and in looking after his personal welfare. John Thomas died intestate in September, 1878, leaving surviving him, besides *Mrs. Samuel*, a brother and another sister, who are his only heirs-at-law. He left an estate valued at about $11,000. In March, 1879, letters of administration on said estate were duly issued to one Richard P. Howell, who immediately qualified and entered upon the discharge of his duties as administrator. Intermediate the death of the intestate and the appointment of an administrator of his estate, *Mrs. Samuel* (at whose house he died, and who had provided for and paid his other burial expenses, about which there is no controversy) procured a tombstone and curbing for his grave, and paid therefor $500. This was in January, 1879. She previously

Samuel vs. Estate of John Thomas.

paid for photographs of her brother, for memorial cards, and "for publication of probate notice," $14.75. She incurred and paid these expenses with the knowledge and approval of Mr. Vaughn, and under his promise that the amount thereof should be repaid to her out of the estate of her brother. The administrator, when informed of the facts, approved the expenditures, but has since refused and now refuses to repay the same to *Mrs. Samuel* unless the court orders him to do so.

The administrator's demurrer to the petition (as not stating facts entitling the petitioner to the relief asked, and for lack of jurisdiction in the court to adjudicate upon the alleged cause of action) was sustained; and this decision was affirmed, on appeal, by the circuit court. From the order of the circuit court, *Mrs. Samuel* appealed to this court.

For the appellant there was a brief by *Henry T. Fuller* and *Wm. P. Lynde*, and oral argument by *Mr. Lynde*. They contended, 1. That the expenditures stated in the petition were a proper charge against the estate. Grave stones, suitable to the circumstances of the deceased, are a part of the funeral expenses of the decedent. 1 Daly, 217; North's Probate Practice, 177, §§ 375-7; Smith's Probate Law, 164; Gary's Probate Law, §§ 392-3; 3 Redfield on Wills, 148, 243, 245; *Rappelyea v. Russell*, 1 Daly, 217; *Wood v. Vandenburgh*, 6 Paige, 278; *Fairman's Appeal*, 30 Conn., 205. Funeral expenses are a charge upon the assets in the hands of the executor or administrator. 3 Redfield on Wills, 245, 247; 14 E. C. L., 202; *Green v. Salmon*, 35 id., 404; *Hapgood v. Houghton*, 20 Pick., 154, 156; *Patterson v. Patterson*, 59 N. Y., 582, and cases there cited; *Campfield v. Ely*, 13 N. J. Law, 150. They are a preferred charge, and must be paid out of the assets of the estate before distribution. 2 Wms. on Ex'rs, 890, 893; 3 Redf., 247, 249-50; *U. S. v. Eggleston*, 4 Sawyer, 199; R. S., sec. 3852, and subd. 5, sec. 3935. 2. That the county court had jurisdiction to allow the account.

For the respondent there was a brief by *Fish & Dodge*, and

oral argument by *Mr. Fish.* They contended, 1. That the county court had no jurisdiction to allow the claim.  2. That, admitting that the administrator had a discretionary power to erect a suitable monument to the deceased, and charge the expense in his account, yet no other person, without any request from the representative of the estate or promise by him to pay therefor, could subject the estate to any of the expenditures named in plaintiff's account, none of them being in the nature of necessary funeral expenses requiring immediate action, for the purpose of securing the deceased a decent burial. *Ferrin v. Myrick*, 41 N. Y., 315; *France's* and *Nesbit's Appeals*, 75 Pa. St., 220; *Foley v. Bushway*, 71 Ill., 386; *Austin v. Munro*, 47 N. Y., 360, 366.  See also *Clancy v. McEnery*, 17 Wis., 177.

LYON, J.  It may be conceded that the tombstone and curbing which the appellant procured for the grave of her deceased brother were appropriate to his estate and condition in life; that the expenditures therefor may be regarded as burial expenses; and that, had the administrator made such expenditures, the court might, in its discretion, have allowed the amount thereof against the estate.  But it does not necessarily follow from these propositions, that the claim of the appellant is valid and enforceable against the estate of the intestate.  The question to be determined is, What expenses incurred intermediate the death of an intestate and the granting of letters of administration are legally chargeable to the estate?  The answer is, we think, that only such necessary expenditures as from the nature of the circumstances cannot properly be postponed until an administrator shall be appointed, are so chargeable. This rule will, of course, entitle an heir, a legatee, widow or guardian, or even a stranger, who has paid reasonable burial expenses, necessarily incurred before administration could be granted, to be reimbursed from the estate.  But, as we understand the law, the rule goes no further.  Every expenditure

which can decently and reasonably be postponed until an administrator is appointed, should be so postponed, and one who, before such appointment, voluntarily incurs an expense for which there is no immediate necessity, does so in his own wrong, and cannot compel the administrator, when appointed, to reimburse him.

The common law imposed severe liabilities upon one who, without authority, assumed to act as an executor. It always has been the policy of the law to prevent any unauthorized and unnecessary interference with the estates of deceased persons, and to confide the settlement of such estates to the legally-appointed and qualified executors or administrators, acting under the scrutiny and control of the proper courts. Certainly, there was no necessity for *Mrs. Samuel* to expend $500 upon her brother's grave before letters of administration issued to Mr. Howell. A delay of a few months would have been no disrespect to the memory of the dead, and could furnish no just ground of complaint to his dearest friend. Besides, had the court allowed the administrator to erect so expensive a memorial, it would have seen to it that the brother and the other sister of the deceased should be consulted, and their wishes in regard thereto considered. It does not appear that *Mrs. Samuel* conferred with them on the subject. It is scarcely necessary to add that the action of Mr. Vaughn in the matter adds no weight to the claim. After the death of his ward, he was as powerless as *Mrs. Samuel* to charge the estate with an expense for which there was no immediate or pressing necessity; and had he incurred the expenditure, he would have been in no better or different position. Hence his advice, or consent or promise that the expense should be paid out of the estate, does not bind the estate.

The same rule excludes the right of the appellant to be allowed the cost of the photograph and memorial cards. As to the sum paid for "publication of probate notice," there is no averment in the petition showing the nature of the notice,

or any necessity for the expenditure. The administrator refused to pay the claim of *Mrs. Samuel*, and in sustaining the demurrer to the petition the county court held that it was not a legal charge against the estate. We are not aware of any rule of law which was violated by that decision. Neither has our attention been called to any case which holds that a person may, before an administrator is appointed, voluntarily incur expenses like those incurred by the appellant, and charge the estate therewith. In most of the cases cited by the learned counsel for the appellant, the expenditures were made by the executors or administrators, and not by third persons before administration granted. The view we have taken of the law of this case is fully sustained in *Foley v. Bushway*, 71 Ill., 386; and the doctrine of other cases cited on behalf of the respondent is in the same direction.

*By the Court.*— The order of the circuit court is affirmed.