In re Will of Somervaill.

*September 6 — September 26, 1899.*

*Appeal from county court: Executors: Undertaking: Jurisdiction.*

Until the person named in a will as executor has fully qualified as such and been confirmed in his office he is not an executor within the meaning of sec. 4032, Stats. 1898, so as to be exempt from giving an undertaking on appeal.

Appeal from a judgment of the circuit court for Fond du Lac county: N. S. Gilson, Circuit Judge. *Reversed.*

For the appellants there was a brief signed by *Swett & Ecke*, attorneys, and by *Maurice McKenna*, guardian *ad litem*, and the cause was argued orally by *O. H. Ecke* and *H. E. Swett*.

For the respondent there was a brief by *Giffin & Sutherland*, and oral argument by *D. D. Sutherland* and *E. S. Bragg*.

DODGE, J. *William McDermott,* named as executor and also as principal beneficiary, by a petition which did not indicate in which capacity, propounded a will for probate, which was denied, the county court finding the instrument not to be the last will and testament of the deceased. Thereupon attorneys filed a notice of appeal on behalf of *" Wm. McDermott,* named as executor" in the proposed will, and served the same as directed by order of the county court, but did not file any undertaking. The circuit court reversed the decision of the county court, and admitted the will to probate, from which judgment this appeal is taken.

The appellants here contend, as they did below, that the appeal to the circuit court was ineffectual for want of an undertaking, and that the circuit court was without jurisdiction by reason of sec. 4032, Stats. 1898, which provides that the party appealing, *other than an executor, administrator, guardian, or trustee,* shall, before his appeal shall be effectual for any purpose, file an undertaking. *Thompson v. Thompson,* 24 Wis. 515; *Drinkwine v. Eau Claire,* 83 Wis. 428. It is contended by the respondent here that he, being so named in the proposed will, was an executor, for the reason that executors derive their existence as such, not from the order of the county court, but from the will itself. This position, in ancient times, was undoubted, and the power of the executor differed but little before and after probate; indeed, he was looked upon as a creation of the testator, his powers resting upon the will as an instrument *inter partes,* and not upon authority derived from the ecclesiastical court. Schouler, Ex'rs, § 137; 1 Williams, Ex'rs (4th Am. ed.), 239, 240. The tendency of more modern decisions and statutes, however, is to contemplate the executor as dependent upon the court for his official existence. Although for his appointment he looks primarily to the will, that appointment is in many authorities said to be ineffectual until the confirmatory action of the court is had. Mr. Schouler (Ex'rs,

§ 52) says: "The full appointment, according to modern English and American practice, comes from the court of probate jurisdiction, which, recognizing and confirming the testator's selection, clothes the executor with plenary authority by issuing letters testamentary to him. . . . Hence, according to our present probate procedure, an executor derives his office (1) from a testamentary appointment, which (2) is confirmed by a decree of the probate court and issuance of letters testamentary to him accordingly." In 11 Am. & Eng. Ency. of Law (2d ed.), 744, it is said: "An executor, according to the common-law doctrine, derives his office solely from the will and not from the probate, which is held to be only evidence of his right. In many, if not all, the states of the Union, the authority of an executor, while derived primarily from the will, is not derived solely therefrom, and is not complete until the executor has qualified by complying with certain statutory requirements and has received letters testamentary from a court of competent jurisdiction." In *Millay v. Wiley*, 46 Me. 230, it was said that the following prerequisites seem to be necessary to constitute a person an executor: " (1) The probate of the will; (2) competency in the opinion of the probate judge; (3) acceptance of the trust; (4) delivery of a bond to discharge the same; and (5) reception of letters testamentary." In *Hatheway v. Weeks*, 34 Mich. 237, 243, it is said: " The executor or administrator is a mere officer of the law." In *Stagg v. Green*, 47 Mo. 500, it was held that the mere fact that a person has been named executor in a will does not make him an executor, but only gives him the right to become such on complying with the conditions required by law. See, also, *McKeen v. Frost*, 46 Me. 239; *Lamb v. Helm*, 56 Mo. 420; *Gilkey v. Hamilton*, 22 Mich. 283; Schouler, Ex'rs, § 137.

Respondent argues that there are still many acts which one named as executor may do before issuance of letters to him which will bind the property or estate. So, also, many

acts by others having some sort of moral relation to the estate are held binding on it; such as incurring funeral expenses by relatives, preservation of property, and even in some instances disposal of property and payment of debts, where done in good faith and justified by peculiar circumstances. Schouler, Ex'rs, §§ 194, 195. While it is perhaps neither easy nor necessary to define how much, it is certain that the almost complete common-law powers of one named executor before probate have been greatly curtailed both by the letter and the policy of the modern statutes vesting in certain courts control over estates of testators. Even vesting of title is now dependent on the probate. Sec. 2294, Stats. 1898; *Melms v. Pfister*, 59 Wis. 186. Our own statutes go quite as far in this direction as any, and, after imposing on the person named executor the single duty of promptly presenting the will for probate, and regulating the manner in which authority from the court may be obtained, provide (sec. 3794, Stats. 1898), that he shall give bond "*before he shall enter upon the execution of his trust.*" In *Batchelder v. Batchelder*, 20 Wis. 452, it is held he is not exercising any trust until that has been done.

It is, however, not important to consider what, if any, acts are valid and binding when done by one named executor which would not be so if done by one not so named. Nor are decisions from other states in that line of much significance upon the question before us, which is merely one of statutory construction,— What did our legislature mean in the use of the word "executor" in this section, where it is coupled with "administrator," "trustee," "guardian," etc.? It is to be observed that in the statutes imposing duties on one named in a will before he has been fully installed in the position by his letters testamentary the expression used by the legislature is, "the person named as executor," and in substantially all cases where the word "executor" is used its obvious significance is an executor confirmed by appointment and fully installed in his office. Sec. 3805, Stats. 1898,

provides that the word "executor," where used, shall include an administrator with will annexed, who cannot be such without issue of letters. It is clear that the original exemption of executors, etc., from bond on appeal (secs. 20, 21, ch. 101, R. S. 1858) contemplated only those who had fully qualified, for no hearing or decision on claims could be had till after letters testamentary had issued. The revisers of 1878 say that the exemption in sec. 4032 was but a retention of the idea embodied in the statute of 1858, extended to other appeals. The reason that such officers are exempted from bond or undertaking is that they are already under bonds,—*Stinson v. Leary*, 69 Wis. 269,—a reason which would exclude respondent.

In the light of all these considerations we cannot avoid the conclusion that the "executor" mentioned and favored by sec. 4032 is one who, like the administrator mentioned in the same connection, is such in full compliance with our statutes; that not until the person nominated by the will to be executor has satisfied our statutes and the county court, and been confirmed in his office, is he entitled to appeal without undertaking. This view is necessarily fatal to the jurisdiction of the circuit court.

*By the Court.*— Judgment of the circuit court is reversed, and cause remanded with directions to dismiss the appeal from the order and judgment of the county court.