Hodge *v.* Cameron, Exr., Appellant.

Argued April 19, 1938.

Before KELLER, P. J., CUNNINGHAM, BALD-RIGE, STADTFELD, PARKER and RHODES, JJ.

*William J. Caldwell*, of *Hugus, Caldwell & McFate*, for appellant.

*Maurice Levinson*, with him *Charles R. Davis*, for appellee.

OPINION BY STADTFELD, J., June 29, 1938:

This was an action in assumpsit brought against a decedent's estate by an undertaker employed by one of the next of kin, to recover his charges for funeral services. Under direction of the court, BRAHAM, J., a verdict was returned in favor of the plaintiff for such sum as would compensate him for the services he had rendered up to the time that demand for the body was made upon him by the executor and the latter's undertaker, together with express disavowal of his employment and notice that if he proceeded he must look solely to the person who employed him for his pay. Plaintiff presented a motion for a new trial and from the order granting the same, the defendant has appealed.

Mrs. Agnes Ball, a widow aged sixty-two years, died testate at about five o'clock A.M. on October 20, 1935, at the Jameson Memorial Hospital, New Castle, Pa. With her at the time of death were Donald L. Cameron, the executor named in her will, and Mrs. Margaret Hinkson and Mrs. Dunbar, two of the sisters of the decedent. Mr. Cameron informed them that decedent had left a will, leaving her property to him. Under the agreed statement of facts filed in this case, Mr. Cameron

avers and Mrs. Hinkson denies, that he also informed
her at the same time that he had been named as executor
in the will. He left the hospital immediately following
the death and drove to his home at Wampum, some ten
miles distant, where he employed the Marshall Under-
taking Company and returned with the undertaker to
the hospital.

In the meantime, Mrs. Margaret Hinkson, a sister
of testatrix, without the knowledge or consent of the
executor, had employed the plaintiff, whose place of
business was within a few blocks of the hospital, as
undertaker, and he had secured the body.

When Mr. Cameron, the executor, with his under-
taker arrived at the hospital, they found the body al-
ready in possession of the plaintiff. They went im-
mediately to plaintiff's place of business and demanded
the body, which the plaintiff, after a conference with
Mrs. Hinkson, refused to surrender. The executor
thereupon gave definite notice to plaintiff, disavowing
all responsibility for his appointment and specifically
informing him that he would have to look to Mrs. Hink-
son for his pay. All this took place prior to 8:30 A.M.
on the morning that decedent died.

The plaintiff, relying upon his employment by Mrs.
Hinkson, proceeded with the funeral and thereafter
presented his bill to Mr. Cameron, the executor, for
payment by the estate, which payment was refused.
Plaintiff brought this action against the estate of de-
cedent and at the trial a verdict in the amount of $26.50
was returned in his favor, under direction of the court,
for his service to the time of express disavowal by the
executor. The will was not probated or letters testa-
mentary issued thereon until after the funeral.

Plaintiff presented a motion for new trial, which was
granted and defendant has appealed from the motion
and order thereon granting the same, which has been
assigned as error. The court below has certified of

4

record that the reasons for granting the motion were solely questions of law, and if erroneously decided, a new trial would be unnecessary and not in the interests of justice.

Among the agreed statement of facts are the following: The casket, the vault and other necessary funeral items were selected on the afternoon before decedent's burial by brothers and sisters of the decedent. At the trial, Mrs. Hinkson and her husband, Mr. Hinkson and Mrs. Dunbar, a sister, all testified that the decedent, Mrs. Agnes Ball, had expressed a desire in their presence that Mr. Hodge, who had buried her mother, be engaged as undertaker to conduct her funeral, and Mr. Cameron had testified that the decedent had at one time expressed a desire to him to have Mr. Marshall, whom she had secured as undertaker for her benefactor, Mr. Leavitt, act as her funeral director. The court submitted to the jury a question of fact as to the testimony on the point of the decedent's preferences, and the jury found as a fact that the decedent had expressed a desire to Mrs. Hinkson to have Hodge as her funeral director and had not expressed a desire to have Marshall as her funeral director.

As stated by the court below, "The naked question of law which emerges is, whether the executor or next of kin has the right to select the funeral director ...... "What we now hold is that an unqualified executor cannot, as a matter of law, by a simple notice to the undertaker, negative funeral arrangements made in good faith by the next of kin who were brothers and sisters, and render the funeral director who proceeds on the directions of the next of kin a volunteer as to the estate." Accordingly, the court granted a new trial. With this conclusion we agree both on general principles governing the question involved in this case and the facts agreed upon.

The court below, in a very learned and comprehen-

sive opinion, has discussed the cases in our own state as also in other jurisdictions. In no case has the exact question of the respective rights of next of kin and the rights of an executor named in a will, but not yet qualified by the grant of letters thereon, been considered or decided.

The leading case in this state where the subject is discussed is that of *Pettigrew v. Pettigrew*, 207 Pa. 313, 56 A. 878, in an elaborate opinion by Mr. Chief Justice MITCHELL. Quoting therefrom on pp. 316, 317: "The statute puts the duty of paying the decedent's debts out of his assets, on his executor, and expressly names funeral expenses as first in the order of priority of payment. Prima facie, therefore, the duty to determine when, where and in what manner the body shall be buried rests with the executor or administrator. *But his right is not absolute nor his judgment conclusive.* The determination must rest as said in *Fox v. Gordon*, supra, 'upon considerations arising partly out of the domestic relations ...... partly out of the universal sentiment ...... that the dead should repose in some spot where they will be secure from profanation; partly out of what is demanded by society for the preservation of the public health, morality and decency; and partly often out of what is required by a proper respect for and observance of the wishes of the departed themselves.' Under the statute in Pennsylvania the right to administration belongs first to the surviving husband or widow. To such survivor, therefore, belongs the right of control of the body for interment, and a waiver of the right to administer will not include a waiver of such right of control unless it be express and absolute. In the exigencies of business and the interest of the estate it is not unfrequently desirable that a stranger, or even a creditor should administer, *but no court would sanction a disregard by such an administrator of the wishes of a widow or even of the next of kin, as to*

*the place and manner of burial.* ...... In the absence of a surviving husband or widow the wishes of the next of kin are entitled to be considered with varying weight according to the nearness of the kinship and the personal relations between them and the decedent." (Italics supplied).

The same views are expressed in *Fox v. Gordon,* 16 Phila. 185, at p. 187: "Primarily the law imposes upon the executor or administrator of a deceased person the duty of burying him decently in a proper place, and in a manner suitable to his estate. *But this duty he must exercise with proper regard for the wishes of those who were nearest and dearest to the deceased in life, and in accordance with the directions of the will, if any have been given.* In the absence of any testamentary provision, the duty devolves upon the husband, widow or next of kin, and even a stranger may be obliged to perform this duty where the deceased has died under his roof and no other provision exists for its performance." (Italics supplied).

Likewise in *Barder v. Barder,* 6 D. & C. 720: "For want of a universal rule on the subject, the policy of the law seems to favor a broad inquiry into the facts of each case, an inquiry having due regard to the interests of the public, the wishes of the decedent and the rights and feelings of those entitled to be heard by reason of relationship or association."

The jury has found, as a matter of fact, that Mrs. Agnes Ball did in her lifetime, during her last illness, instruct her sister, Mrs. Margaret Hinkson, to engage Mr. J. R. Hodge, the plaintiff, as her funeral director.

"Unquestionably, the declarations of the decedent expressing a wish as to burial were admissible, and under ordinary conditions courts will see to it that the expressed wishes are, as far as it is possible, carried out. It is equally true that the right to protect the remains of a deceased person belongs to the next of kin":

*Hoppe et al. v. Cathedral Cemetery et al.,* 24 Dist. 344, 348, 349.

"Whether the decedent's directions were regarded as paramount or not, it is agreed in all the cases that they are entitled to respectful consideration whenever the question comes into court": *Pettigrew v. Pettigrew,* supra, 317.

Mrs. Hinkson, for the purpose of engaging the funeral director, had full authority to bind the decedent's estate for any debts which she might reasonably create in the exercise of such authority, consistent with the decedent's station in life, and the value of her estate. The Act of 1917, P. L. 475, Sec. 13 (a), specifically provides that: "All debts owing by any person within this State at the time of his decease, shall be paid by his executors or administrators, so far as they have assets, in the manner and order following; namely, One, funeral expenses, medicine furnished and medical attendance given during the last illness of the decedent, and servants' wages, not exceeding one year."

The court, in the case of *Sinnott's Estate,* 15 Dist. 873, has properly interpreted this Act when it held: "The statute places funeral expenses at the head of the list of preferred debts, and when it is said that the 'first duty of an executor or administrator is to bury the dead' the meaning, obviously, is that where the burial has already taken place, its cost is the first thing to be paid for."

In *Ennis' Estate,* 76 Pa. Superior Ct. 292, it was held, at p. 294: "Where an undertaker contracts with the executor of a decedent's will, he may, ordinarily, hold such person liable for the amount of his bill, and the responsibility for the reasonableness of the charges is transferred to the legal representative who must satisfy the parties interested in the estate and the court in that respect; but where he proceeds at the direction of one without authority to contract for and bind the

estate, the law implies a contract on behalf of an executor having assets sufficient for the purpose only to the extent of a funeral suitable to the station in life of the decedent as well as not disproportionate to the size of the estate." See also: *France's Estate,* 75 Pa. 220; *Bair v. Chambers,* 70 Pa. Superior Ct. 356.

An examination of the cases in other jurisdictions indicates that the next of kin, and not the executor, has the right to control the manner of burial.

"An undertaker is justified in furnishing the necessary service upon the request of any one so related to the decedent as to exclude the idea of officious interference": *Golden Gate Undertaking Co. v. Taylor,* 168 Cal. 94, 98, 141 Pac. 922; 3 Schouler on Wills, Executors & Administrators, p. 2384, Sec. 2749.

In the case of *Enos v. Snyder,* 131 Cal. 68, 63 Pac. 170, where the plaintiff, next of kin, was awarded the possession of the decedent's body for burial in a controversy with the executor, the party defendant, the court, after an elaborate review of the authorities, held that aside from any California statute regulating the burial of the dead, the right of burial belongs to the next of kin, citing as their authority from the case of *Renihan v. Wright,* 125 Ind. 536; 25 N. E. 822: "Our conclusion is, that the custody of the corpse and the right of burial do not belong to the executor or administrator, but to the next of kin, and that the courts of this State possess the power to protect such next of kin in the exercise of such right." To a similar effect involving the rights of the next of kin to the body of the deceased, the court, in the case of *O'Donnell v. Slack,* 123 Cal. 285, 55 Pac. 906, at p. 907, held: "Therefore, in a case such as this, neither the court in probate nor the personal representative has any right to the body of the deceased, nor any right to control the manner of disposing of the remains, nor to dictate the place of interment. The proper expenses of such disposition may

well be a charge against the estate, but the duty and right of burial are quite different things from the duty and right of auditing and paying the expenses of such burial."

The court, in the case of *Koerber v. Patek*, 123 Wis. 453, 102 N. W. 40, at p. 46, in discussing the rights of the next of kin over a dead body before burial, stated: "From this point of view, we think, are justified certain conclusions as to which, among the survivors, bear this duty and enjoy the right, which seem to be supported by the general current of authority. First among these is that the right is not vested in executors and administrators, as seemed to be suggested in some English cases quoted somewhat inconsiderately in this country. The right, such as we have suggested it, is not affected by the fact that the funeral expenses may properly be a charge upon the decedent's estate, and thus ultimately be payable by the executor or administrator. *Samuel v. Estate of Thomas*, 51 Wis. 549, 8 N. W. 361. That, however, is the only relationship which such an official has to the subject. An entirely sufficient practical obstacle to the vesting of either duty or right in such officers in most of the United States, including Wisconsin, is that they have no existence at the time when, according to such custom, if not necessity, the duty must be performed. Even an executor does not become such until qualified by a court to act. *Re Somervaill's Will*, 104 Wis. 72, 80 N.W. 65."

The court, in the case of *Larson v. Chase*, 47 Minn. 307, 50 N. W. 238, in commenting on the right of the next of kin to institute a suit to recover damages for mutilating a dead body, said: "All courts now concur in holding that the right to the possession of a dead body for the purpose of decent burial belongs to those most intimately and closely connected with the deceased by domestic ties, and that this is a right which the law will recognize and protect. The general, if not uni-

versal, doctrine is that this right belongs to the surviving husband or wife or to the next of kin." .

See also the case of *Thompson v. Pierce*, 95 Nebr. 692, 146 N. W. 948, wherein the court held: "The courts of the United States generally recognize the right of the surviving spouse or next of kin of a deceased person to the care, custody, and control of the remains for the purpose of sepulture. ...... The right of the surviving husband or wife, or, *if there be none*, of the next of kin, to have the custody of the body of the deceased person and decide upon the place of its final burial is supported by the better reasoning and by the almost unanimous voice of the authorities."

Two Indiana cases, that of *Renihan v. Wright*, 125 Ind. 536, 25 N.E. 822; 9 L.R.A., 514, and that of *Bogert v. The City of Indianapolis*, 13 Ind. 134, likewise declare the law to be that the next of kin and not the personal representatives control the manner and disposition of burial.

In the matter of *Widening Beekman Street*, 4 Bradford Surrogate (N.Y.) 503, dealing with the question of re-interment of dead bodies and wherein the Master, Samuel B. Ruggles, has very thoroughly analyzed the entire law of burial, the following often-quoted principles of law are found: "1. That neither a corpse nor its burial, is legally subject, in any way, to ecclesiastical cognizance, nor to sacerdotal power of any kind. 2. That the right to bury a corpse and to preserve the remains, is a legal right, which the courts of law will recognize and protect. 3. That such right, in the absence of any testamentary disposition, belongs exclusively to the next of kin. 4. That the right to protect the remains includes the right to preserve them by separate burial, to select the place of sepulture, and to change it at pleasure." [1]

---

[1] To same effect see *Palenzke v. Bruning*, 98 Ill. App. 644; *England v. Central Pocahontas Coal Co.*, 86 W. Va. 575; 104 S. E.

The general rule seems to be that the next of kin has the right to bury the dead, leaving to the executor the duty of paying the reasonable cost therefor.

In none of the Pennsylvania cases does there appear to have been a direct conflict between an executor and the next of kin as to who had the right to select the undertaker.

The court below, believing it had erred in limiting recovery by plaintiff to compensation for what plaintiff had performed up until the demand by Cameron, who subsequently qualified as executor, granted a new trial. In so doing, we believe the court followed the general rule to which we have referred. Under the probate system existing in the State of Pennsylvania, it cannot be determined who the executor or administrator is until the party has duly qualified and has received his commission from the Register of Wills. In fact, an executor may never qualify. The performance of burial simply cannot wait the discovery of wills and their probate, nor the dispositions of disputes respecting the personnel of those entitled to administer, besides ordinary proprieties and respect for the dead defer even the opening of a will until after the burial. The burial of the dead in this state is not one of the statutory rights and duties of the executors and administrators. The duty of the executor is primarily one of payment, that is, of auditing and paying the expenses of such burial. His duties are those of conserving and distributing the assets of an estate to those who are legally entitled to receive the same.

As aptly stated by the court below in the opinion filed: "The business of employing an undertaker to care for the body of a deceased is often a delicate matter. The undertaker is a person who goes into and for the

46; *Anton J. Cermak, Bailiff et al., v. Helena Pauksztis et al.,* 218 Ill. App. 341; *Curlin v. Curlin (Texas),* 228 S. W. 602; *Commonwealth ex rel. v. Susquehanna Coal Co.,* 5 Kulp 195.

time being takes charge of the home where the funeral is being conducted. Some undertakers might be persona non grata in any home. Consideration of sentiment and traditions often attach to a particular undertaker. Trust companies in modern practice are often appointed executors. But the general custom of our people is to hold funeral services at the home of one near of kin. Does the personal representative who may be a corporation or a creditor, as pointed out in *Pettigrew v. Pettigrew* (supra), have the right to say who is to go into the home of the next of kin to handle the funeral?"

We see no reversible error in the action of the court in granting a new trial.

Order affirmed.