## Miller Estate

T. A. Tenor, for claimants.

Philip E. Hamilton, for exceptant.

MCCREARY, P. J., November 20, 1948.—At September term, 1948, no. 42, T. A. Tenor, Esq., executor of the last will and testament of Elizabeth M. Miller, late of the City of Beaver Falls, Beaver County, deceased, filed his first and final account. The same was duly advertised according to law and notice given to all par-

ties in interest that it would be presented to the court for confirmation nisi on the first Monday of September 1948. That day being a legal holiday, the same was confirmed nisi on the day following in accordance with the rules of court. The accountant listed one item of credit—Mrs. Florence Hoagland, nursing care, $432. Credit was also taken on account of a payment in the amount of $300 to J. Orville Scott as part payment on the amount of the funeral bill. A proposed schedule of distribution accompanied the account which showed that the accountant proposed to distribute the balance in the amount of $750 as follows: J. Orville Scott, balance of funeral bill, $383; Carrie Merryman, legacy, $367.37.

Within the time allowed by law Arda S. Miller, one of the residuary legatees, a son of decedent, filed exceptions to the account as follows: (1) Under the provisions of the last will and testament of Elizabeth M. Miller she specifically provided that her funeral should not cost more than $500. Exceptant excepted to any amount being paid for funeral bill in excess of $500; (2) exceptant also excepted to the sum of $432 nursing bill paid to Mrs. Florence Hoagland, and demanded proof of the services so rendered.

Under our rules of court, and in pursuance of notice duly given to the parties interested, the matter came on for hearing on the fourth Monday of September 1948, which was the day fixed in the notice for hearings in the matter of the distribution of the balance in the hands of the accountant in the estate we are now considering, as well as in other estates advertised at the same time. The accountant, T. A. Tenor, appeared at the audit and, after being duly sworn, testified as to the matters having to do with the administration of the estate and distribution of the balance. Neither exceptant nor his counsel appeared at the audit, and in accordance with the testimony given at

the audit the court dismissed the exceptions and entered a decree providing for the distribution of the balance of $750.37 as provided for in the schedule of distribution, namely, to J. Orville Scott, mortician, balance of funeral bill, $383, and to Carrie Merryman, legacy, $367.37. Thereafter, on September 30, 1948, Arda S. Miller filed exceptions to the decree of the court as follows:

"1. The awarding of more than the sum of five hundred ($500.00) dollars for funeral expenses is specifically excepted to for the reason that the last will and testament of decedent specifically limited said expense to not exceed $500.00.

"2. The item of $432.00 nursing bill of Mrs. Florence Hoagland is excepted to as being excessive, and proof of services rendered is demanded."

It should be noted in passing that in addition to the personal assets left by decedent, amounting to $1,-799.58, decedent left real estate which has been appraised for inheritance tax purposes in the amount of $3,500, making total gross assets in the amount of $5,299.58. It was said at the hearing that the real estate has a present market value of about $5,000.

In accordance with the rules of court the matter of the exceptions was placed on the argument list, and they came up for argument on November 5, 1948. We now have the matter for determination after argument.

Decedent died November 5, 1947, testate, and letters testamentary on her estate were granted November 29, 1947. In the normal course of events decedent would have been buried within three or four days from the date of death, namely, November 8 or 9, 1947, some three weeks before T. A. Tenor was qualified as executor, and some three weeks prior to the probate of her last will and testament. The last will and testament of decedent provides, inter alia, that her just debts be

fully paid as soon as possible after decease, and "Second. I direct that the cost of my funeral and burial expenses shall not exceed the sum of $500.00." After providing for a $700 legacy for her daughter, Carrie Mae Merryman, she further provided:

"Fourth. All the rest, residue and remainder of my estate, of whatever nature, I direct to be divided equally, share and share alike, between my beloved daughter, Carrie Mae Merryman, and my beloved son, Arda S. Miller." She nominated T. A. Tenor as her executor and directed that he be employed as attorney for the estate.

At the argument counsel for exceptant withdrew the exception relating to the payment of $432 to Mrs. Florence Hoagland, and agreed that the credit taken by the executor for this item of nursing service was a proper credit. There is therefore only one question for this court to determine, and that is whether the Court acted properly in dismissing the exception filed to the account and allowing payment to J. Orville Scott, funeral director, of the balance of $383 on account of funeral expenses. The attorneys, at the argument, both conceded that the question for determination by the court is purely one of law. The question to be determined by the court may be briefly stated as follows: Where a daughter of a decedent employs an undertaker to take charge of the decent burial of her mother prior to the probate of the last will and testament of decedent, and prior to the appointment of an executor, is she limited in the amount of expenses incurred for this item by the fact that after the last will and testament is admitted to probate it is discovered that decedent placed a limitation of $500 on the executor for funeral expenses? We answer this question in the negative.

Our attention has been called to no case among all of the reported cases in the United States, and diligent search on our part has revealed none, where this exact

question has been raised and decided. There are many cases dealing with the rights of the members of the immediate family to take charge of the body of the deceased and to provide for the decedent burial thereof, and to decide from whose home and in which cemetery decedent shall be buried, even contrary to the wishes of a qualified executor, but we find none that touches on the exact problem we have before us.

It should be noted that at the hearing for the audit and distribution of the estate Carrie Mae Merryman, a daughter and favored legatee of decedent, and one of the two residuary legatees, filed a stipulation in writing whereby she stated that she has no objection to the bill of J. Orville Scott, mortician, in the amount of $683. She is the daughter who ordered the funeral prior to acquiring any knowledge of the limitation of $500 made in the will of decedent. Inasmuch as the record shows that the will was offered for probate and an executor was appointed three weeks or more after she incurred the bill, we have no hesitation in reaching the conclusion that the bill should be paid, if it is found by the court to be reasonable.

A similar, although not an identical, situation arose in the matter of the audit and distribution of the estate of Anna Becker. This case is reported in 79 Pitts. L. J. 1. The case was before three outstanding orphans' court judges of Pennsylvania, namely, Trimble, P. J., Mitchell and Chalfant, JJ. In that case a boarder in the home of decedent, who immediately after her death and when no members of her family or relatives were available, engaged an undertaker and agreed to and did pay the funeral expenses. In that case testatrix had set apart $500 in her will for funeral expenses and directed her executor, who was an undertaker, to have charge of the funeral, and it was not known until after the funeral had been conducted by another undertaker that there was a will or that testatrix had made

such a selection. The Orphans' Court of Allegheny County allowed the undertaker who performed the services at the request of the boarder the full amount of the burial expenses, $445 and surcharged the executor, the undertaker named in the will as the one who was to conduct the funeral and for whom $500 had been provided in the will, when the latter took credit in the account for payment to himself of the $500 for which he had rendered no services. The court said, in part, as follows (p. 3):

"While it is the duty of an executor to bury the body of a decedent, there are times when he may be unable to act with the promptness required. The duty may then fall on the family or a friend of the family. In the *Estate of George Meyer, Deceased,* 18 Phila. 42, Hanna, P. J., observed, 'Among the duties of an executor or of an administrator is to attend to the funeral and proper interment of the remains of his decedent, and a reasonable and judicious expenditure will always be approved. If this duty be performed by some member of the family or even a stranger, without objection on his part, his assent will be presumed and the estate held liable for the amount paid or indebtedness incurred. This at times will necessarily include the purchase of a grave or cemetery lot'."

As was said in France's Estate, 75 Pa. 220, where the widow paid the funeral expenses:

"The necessary rites of humanity require prompt action. The widow and family of the deceased occupy a position most convenient to discharge those duties. When they do properly discharge them, and incur and pay the necessary expenses, without objection on the part of the executor, his assent must be presumed, and the estate be held liable for the amount paid."

Judge Braham of the Lawrence County courts had a similar problem to decide in the case of Hodge v.

Cameron, 86 Pitts. L. J. 141. In that case decedent had left a will naming Cameron as executor, but the next of kin of decedent engaged an undertaker and delivered the body of decedent into the hands of this undertaker. The will of decedent had not been probated at the time, nor was it probated until after the funeral. Before the body of decedent had been embalmed, and certainly before any large item of expense such as the ordering of a casket, etc., had been incurred, the unqualified executor ordered the undertaker who had been employed by the members of the immediate family to deliver the body of the deceased to another undertaker of the executor's own choosing. This the undertaker employed by the family refused to do, and when Cameron did qualify as executor after the funeral he refused to pay the funeral bill, claiming that he had given proper warning of the fact that he was named as executor in the will and that he was authorized to make the arrangements for the funeral. Judge Braham stated the question before him to be "the naked question of law which emerges is, whether the executor or next of kin has the right to select the funeral director." He further said (p. 148):

"What we now hold is that an unqualified executor cannot, as a matter of law, by a simple notice to the undertaker, negative funeral arrangements made in good faith by the next of kin who were brothers and sisters, and render the funeral director who proceeds on the directions of the next of kin a volunteer as to the estate."

We are fully in accord with this statement of the law, and believe that it has peculiar application to the facts in the case at bar. Judge Braham further observes as follows (pp. 146, 147):

"Since the law everywhere looks with favor rather than with disfavor on honest, compassionate and reasonable efforts made by a widow or next of kin to take

care of the body of the deceased, we begin our inquiry in the present case with a presumption in favor of the act of the next of kin in employing the plaintiff. The plaintiff had begun his professional services. He was instructed by the next of kin to proceed. From our survey of the law as indicated above, we are somewhat in doubt whether the law in Pennsylvania does hold as contended, that the executor has the superior right to the next of kin. We have concluded, however, that an executor has no such right, unless he was fully qualified and presents himself as an executor in fact as well as an executor in possibility. Although there was a will, it could not be certainly determined it would be probated as the last will, unless and until it was actually presented for probate. When, therefore, Cameron, by virtue of his knowledge that there was a will appointing himself as executor, attempted to remove the body from the possession of the plaintiff, who held it for the next of kin, it is our opinion that it was his duty to make his position good by immediately causing the will to be probated and by presenting himself as a duly qualified executor. There is a presumption that the acts of the next of kin in taking care of the body of her sister were proper and would bind the estate. Perhaps there was also the presumption that the will in question would be probated and the executor would qualify. In such a state of affairs, it is not unjust to require that the executor remove all doubt and ambiguity from his side of the case before he proceeds. . . .

"To be sure in the present case the decedent thought enough of this executor to leave him all of her property and to make him her executor, but she did not say anything in her will about his conducting the funeral arrangements except to say that he should pay for her funeral. Despite that omission, it would appear that she had confidence in the defendant and wanted him

to manage her affairs. But what we must look for is not the rule which governs one case but the general rule which will apply to all cases. As a general rule, we conclude that if the brothers and sisters of the deceased wanted to have the funeral at one of their homes on Ray Street, in New Castle, and to bury her in Oak Park cemetery, their wishes should prevail over those of an executor, of no kin of the deceased, who desired to conduct the funeral from the home of the decedent and to bury her in Wampum. This last circumstance deserves somewhat more definite mention. When Cameron went to Hodge's place of business on the morning of the death of the decedent he was requesting more than that Marshall should conduct the funeral. He was expecting to conduct the funeral from her late residence and to bury her in Wampum. It was for those reasons he wanted the body. No case would go so far as to allow the executor to select the burial spot. This is all the more reason for requiring that the executor be fully qualified before he attempts to assert any right against the next of kin. It is upon the failure of the executor to qualify before making his demand that we rest this case. To be sure his authority for some purposes relates back to the death but not, in our opinion, to defeat the wishes of brothers and sisters as to funeral arrangements."

This case was appealed to the Superior Court of Pennsylvania, and in a well written opinion by Judge Stadtfeld (Hodge v. Cameron, 132 Pa. Superior Ct. 1), the decision of the Lawrence County court was affirmed, the court reaching the conclusion that as between an unqualified executor and the next of kin of decedent, the next of kin have the right to bury the dead, leaving to the executor the duty of paying the reasonable cost thereof.

Remick, in his work on Pennsylvania Orphans' Court Practice, vol. 1, 3d ed., says (p. 119) :

"As a practical matter it is rarely that a funeral can be arranged or conducted by an administrator in his official capacity as ordinarily letters will not be granted until after the burial of the deceased. In making all arrangements for the funeral or burial the desires of those entitled to the estate must not only be considered but care must be taken to keep the expenses within limits compatible with the size of the estate and the general condition, habits in life and standing in society of the decedent. Any excess must be borne personally by the next of kin or those who contracted the bill or will be surcharged against the administrator if the rights of creditors or the Commonwealth (in its claim for inheritance tax) are prejudiced.

"If the will can be produced and opened, prior to burial, the desires of the decedent, if any, therein expressed with reference to his interment should be followed."

We do not mean to say, of course, that in every case the directions of decedent as to the amount to be expended for his funeral is to be disregarded, but we do say that where the matter of the decent burial of decedent is undertaken by the surviving spouse, or in his absence the children of decedent, prior to the appointment of an executor and prior to the probate of the last will and testament of decedent, the surviving spouse or next of kin in the order named have a right to make arrangements for the funeral of decedent, leaving only to be determined the question of the reasonableness of the charges of the funeral director employed.

Hunter, in his Pennsylvania Orphans' Court Commonplace Book, says (vol. 1, p. 543):

"An undertaker may recover from the estate only to the extent of a funeral suitable to the station in life of the decedent, as well as not disproportionate to the

size of the estate; in other words, reasonable under all the circumstances."

In the absence of an executor or administrator, he says, a stranger or a relative may attend to the funeral, and if he pays therefor he is entitled to be reimbursed by the estate; the law will imply a request and promise to pay. He further says (p. 545) :

"The paramount right as to the burial of the dead is in the spouse; second, in the next of kin in the order of their relation; and third, the desires of the decedent may or may not prevail against those of the spouse, but usually will prevail over the next of kin."

He refers to no case where the next of kin incurred expenses for funeral in excess of those provided in a will which was not probated until after the funeral.

Who could possibly know, in the first hours of bereavement of the children left behind, that there is a last will and testament, or, if one is shown to them, that it is the last will and testament. In the case we are considering the will is dated June 8, 1944, and at the argument counsel for both sides stated that a number of wills had been made by decedent in addition to the one which was offered for probate. Are the spouse, or the children, of decedent to deal with an undertaker at their peril in the event that the paper which was shown to them, purporting to be the last will and testament, turns out to be a will which has been revoked by a later writing? Are we to now say that a limitation placed in a will dated more than three years before the death of decedent, before prices had reached the high which we now must pay for everything, is the reasonable limit beyond which the daughter of decedent dare not go to provide her mother a decent burial, even had it appeared in the case we are now considering that she was shown a paper which it was proposed to offer for probate sometime after the funeral? We conceive not. She could not possibly

know that there was not another writing outstanding of later date wherein decedent fixed the limitation on funeral expenses at a figure in keeping with present day prices. She was only required to limit the expenses by a fair consideration of the station in life of decedent and the size of the estate. This she has done.

We conclude, therefore, that the next of kin have authority to employ an undertaker and make arrangements for the decent burial of decedent, if such arrangements are made prior to the probate of the will of decedent and prior to the appointment of an executor, leaving to the court the only question to be determined as that of the reasonableness of the charge considering the station in life of decedent and the size of the estate.

It appears from the record that the estate of decedent in the case we are considering was appraised, without objection on the part of anyone, in the total sum of $5,299.58. The charges for the funeral are itemized as follows:

| | |
|---|---|
| Service and Casket | $495.00 |
| Vault | 125.00 |
| Clothing | 28.00 |
| Death notices in papers | 3.00 |
| Opening grave | 25.00 |
| Additional on bed size blanket | 7.00 |
| | $683.00 |

We are of the opinion that the amount of $683 is reasonable, and that it is in keeping with the station in life of decedent and is not disproportionate to the size of the estate.

Entertaining these views we make the following

*Order*

Now, November 20, 1948, the exceptions filed to the decree of the court directing the balance in the hands of the executor to be distributed as follows— J. Orville Scott, mortician, $383; Carrie Mae Merryman, legacy, $357.37—are dismissed, and the executor

is now directed to distribute the balance in his hands in accordance with the decree of the court entered September 27, 1948.