# Leonard Estate

*Charles J. Bufalino, Jr.*, for petitioner.

*J. Justin Blewitt*, for respondent.

SELECKY, P. J., June 3, 1958.—Albert P. Leonard, a brother, heir and legatee of Agnes H. Leonard, deceased, obtained a preliminary injunction from this court on April 29, 1958, temporarily enjoining Stanley M. Leonard, another brother, and executor of said estate, to show cause why he should not be restrained from placing a monument on a plot of lots in a cemetery where Agnes H. Leonard, the deceased, was buried. After an adjourned hearing was held thereon, this court dissolved the temporary injunction by order dated May 21, 1958.

Upon petitioner's averment that the injunction was necessary "for the protection of the property within its jurisdiction", because the executor was to expend the rather inordinate sum of $1,500 for a monument, which monument, it was alleged, would extend over other cemetery lots of petitioner, inherited from decedent, thus damaging said lots, this court issued the temporary injunction, by virtue of its authority under section 732 of the Orphans' Court Act of August 10, 1951, P. L. 1163, 20 PS §2080.732.

At an adjourned hearing, Stanley M. Leonard, the executor of the estate, testified that he would not use any funds of the estate whatsoever for the payment of this monument, but would pay for it from other funds. It is evident, therefore, that there is no need for the "protection" of the funds of the estate from this expense.

Petitioner then pressed the point that the monument would extend, along with its foundation, for a few inches into a lane alongside other cemetery lots which petitioner inherited from said Agnes H. Leonard, the deceased, under section 14(15) of the Wills Act of April 24, 1947, P. L. 89, as amended, which states:

"If in a will no express disposition or other mention is made of a cemetery lot owned by the testator at his decease and wherein he or any member of his family is buried, the ownership of the lot shall not pass from his lawful heirs by a residuary or other general clause of the will but shall descend to his heirs as if he had died intestate.": Subdivision added June 3, 1953, P. L. 278, 20 PS §180.14(15).

The will, in this case, made no express disposition of these lots and the testimony adduced at the hearing clearly indicated that these lots were in the ownership and control of testatrix, subject to the rules and regulations of the St. John's Cemetery, and that the three brothers were her lawful heirs.

Petitioner maintained that these cemetery lots required the "protection" of this court from the attempt of the executor to place this monument in such a manner that it would extend a few inches into the lane directly in front of said lots. Petitioner amended his petition to allege that the right to choose a monument, and its location, even where the estate funds are not being used, therefore, is a personal right that belongs to the next of kin, and not to the executor, and cited the case of Hodge v. Cameron, 132 Pa. Superior Ct.

1. An examination of this case reveals that the right at issue therein was the right of burial, and the court indicated that an executor cannot "negative funeral arrangements made in good faith by the next of kin who were brothers and sisters . . . ," at page 4, and quoted the leading case of Pettigrew v. Pettigrew, 207 Pa. 313, at 317, to the effect that: "Whether the decedent's directions were regarded as paramount or not it is agreed in all the cases that they are entitled to respectful consideration whenever the question comes into court."

Petitioner argued that this right of next of kin and decedent to direct the burial extends to the right to select a monument, its placement and general design, as well as the names that will be inscribed thereon. The attention of the court has not been directed to any case which clearly indicates this, but even assuming this, the testimony clearly indicated that decedent herself, after she completed paying for said cemetery lots, which were originally purchased by her parents, and paying the charges for perpetual care thereon, upon the basis of which she was issued the certificates of burial rights in her name by those in charge of the St. John's Cemetery, entered into very detailed negotiations with her brother, the executor of this estate, himself a funeral director, for the erection of a monument on said cemetery lots and, in fact, went to Marcelino Malo, of the Dupont Monument shop, to select two monuments, one for the cemetery lots of the brother, the executor in this case, and one for the cemetery lots of decedent, both of which monuments were to be of the same design and size.

The testimony further shows that there was considerable correspondence between decedent and this brother, on the one part, and other relatives, named Judge, on the other part, as to whether these relatives

would contribute to the cost of the erection of this monument, for the privilege of having the family name of Judge inscribed thereon, as a memorial to certain relatives, named Judge, buried in the same plot. The evidence clearly indicated that the relatives named Judge declined to participate in the erection of the monument, and that decedent then left instructions with her brother to proceed with the erection of said monument with only the one family name, that of Leonard, thereon, and omitting the family name of Judge. The court mentions this because one of petitioner's complaints was the refusal of the executor to have inscribed on said monument the names of the other relatives, Judge, who were buried in said plot.

In view of the fact that the executor, Stanley M. Leonard, is causing this monument to be erected at no expense to the estate, and that decedent, whose wishes should be paramount, directly ordered that the family name of Judge should not be inscribed thereon, and herself chose the size of the monument, if said monument does, in fact, extend a few inches into the lane directly adjoining the cemetery lots which petitioner inherited, we find that petitioner inherited the right to burial in these cemetery lots subject to the right to have the monument encroach thereon a few inches.

Thus, there remains no property within this court's jurisdiction which requires "protection" by the injunctive process. Hence, this court dissolved the temporary injunction previously issued.

The court notes that petitioner did submit its petition for preliminary injunction, and his bond, in accordance with equity rule 1531, which is in accordance with Supreme Court O. C. Rule 1, sec. 3, which provides ". . . the pleading and practice shall conform to the pleading and practice in equity in the local Court of Common Pleas", except when otherwise provided.