## Lutz Estate

*Albert R. Subers*, for accountants.

*James R. Beam*, of *Smith, Aker, Grossman, Hollinger* and *Jenkins*, for objector.

TAXIS, *J.*, January 2, 1980—At the time of audit, the court was asked to pass upon the question whether the legacy to Edith Murphy in paragraph Third was bequeathed to her as a volunteer or as a payment for services and, consequently, whether the legacy abates with the other legacies.

Decedent died on June 2, 1976, leaving a will dated October 24, 1972. The probated will is a copy fair of an attorney-drawn document and decedent's own additional writings. At the time of her death, decedent owned 50 shares of American Telephone and Telegraph. By article Third of the will, decedent provided as follows: "Edith Murphy, my sister, may buy my A. T. & T. after my death at 1/2 price (because she will be doing necessary things for my burial) so I give her 1/2 of A. T. & T. out of my moneys—Edith can pay 1/2—Then share it with

my granddaughter Jet or Jacqueline Perry." The accountants made a preaudit distribution of all 50 shares to the named legatee who paid to the estate the price of 25 shares of A. T. & T.

Counsel for the objector Jacqueline E. Perry, also known as Jacqueline P. Mamone, objects to the distribution of the 25 shares of A. T. & T., contending that section 3541 of the Probate, Estates and Fiduciaries Code dictates that all other bequests, including the legacy in article Third, abate before the residual bequest to Mrs. Mamone. In addition, the objector urges that she is entitled to share the bequest. The accountants argue that Edith Murphy is entitled to the 50 shares at one-half price; that Mrs. Mamone is not entitled to share the bequest; and that the bequest is a payment for services and therefore does not abate with the other bequests.

Preliminarily, we must interpret the language of this bequest which is not at all clear. The classic rule is that the testatrix' intent must prevail as gathered from the language of the will, the scheme of distribution, the circumstances surrounding her at the time she made her will, and the existing facts. The court will only resort to canons of construction where the language of the will is ambiguous or conflicting or the testatrix' intent is for any reason uncertain: Pearson Est., 442 Pa. 172, 275 A. 2d 336 (1971). Furthermore, artificial rules will be disregarded if in conflict with the testatrix' intent: Earle Est., 369 Pa. 52, 85 A. 2d 90 (1951).

In the instant bequest, the intent of the testatrix to benefit her sister is clear from the first phrase of the bequest, as explained by the parenthetical "because she will be doing necessary things for my funeral." The phrase ". . . so I give her 1/2 of A. T. & T. out of my moneys—Edith can pay 1/2" restates the obvious effect of the bequest: payment by the

legatee of one-half the value of the stock would necessarily mean that the decedent's estate would fund the other half.

The meaning of the last phrase "Then share it with my granddaughter, Jet or Jacqueline Perry" and the antecedent to the pronoun "it" are unclear. To construe the meaning as giving one-half of the bequest to the granddaughter negates any privilege which the testatrix intended to bestow upon the sister for her services. However, the will shows a general preference for the objector over other legatees. Where the words used might, under a given construction, lead to a result that is highly improbable, the court will lean toward a construction that will carry out the natural intention of the testatrix: Conner's Est. (No. 2), 318 Pa. 150, 178 Atl. 15 (1935); Walker Est., 376 Pa. 16, 101 A. 2d 652 (1954). Therefore, consistent with the testatrix' clear intention that the executrix derive some benefit for the extra services, the court construes the phrase to mean that the antecedent of the pronoun "it" is "1/2" and that the testatrix intended that the discounted payment go to her granddaughter, Jet or Jacqueline Perry.

The funds in this estate are insufficient to pay all of the legatees named in the will and, therefore, we must apply the rules of abatement. Counsel for the objector argues that Edith Murphy, as executrix, was charged with the duty of making burial arrangements and that, therefore, the legacy does not constitute payment for services but a gift. Under article First, decedent gave the following specific directions: "I further direct that my funeral and burial be the same as my husband's with burial in Riverside Cemetery and not in my family burial plot

in Laurel Hill Cemetery and *direct my executors to take complete charge of all funeral arrangements*." (Emphasis supplied.)

It is clear from the testimony that Edith Murphy fulfilled this obligation. In arranging the funeral for decedent, the accountant made at least five trips between Norristown and Northeast Philadelphia; visited decedent in the hospital the evening that she died; arranged for disposition of the body; made reservations for the luncheon following the funeral; ordered the flowers, searched the house for proper burial garments; notified the family; made a special trip to order a mahogany casket requested by decedent; and contacted the pastor to make arrangements. Performance of these duties required that the accountant take time off from work.

The duty of the executor is to collect the assets, pay the debts, account to the court and comply with the final order of distribution: Speare Est., 349 Pa. 76, 36 A. 2d 489 (1944). The burial of a decedent is not one of the duties devolving upon the executor: Hodge v. Cameron, 132 Pa. Superior Ct. 1, 200 Atl. 238 (1938). Thus, the legacy does not constitute a commission for services as executrix and neither does the commission include compensation for this service.

In awarding the legacy in article Third, decedent recognized the extraordinary service which the accountant was performing by her parenthetical statement "because she will be doing necessary things for my burial." Consideration was given for the legacy and, thus, the accountant does not take as a mere volunteer. Furthermore, where there is consideration given for the legacy, the legacy is entitled to a preference and, therefore, does not

abate with the other bequests. See Harper's Appeal, 111 Pa. 243, 2 Atl. 861 (1884); Wilson Est., 15 Phila. 528; Gassman Est., 14 Phila. 308 (1881). In addition, counsel for the objector agrees that the dividend income from the stock follows the stock and, therefore, is now properly awardable to the accountant.

## ORDER

And now, January 2, 1980, this adjudication is confirmed nisi.